THE EXECUTORS OF JAMES MARSHALL, deceased,

*v.*

JAMES HADLEY et al.

1. Under a devise of a house and lot located in a particular place, when in truth the testator owns no land there, but holds a mortgage on land located there, the mortgage will not pass.

2. The right which a mortgagee acquires in the mortgaged premises does not make him the owner of them. All he acquires by his mortgage is the right to hold the land as security for the payment of his debt, and the only dominion he can exercise over the land is either to appropriate it or have it appropriated to the payment of his debt.

. 3. In construing a will all doubts must be resolved in favor of the testator's having said just exactly what he meant, and plain, clear words, when not repugnant to other words used in another part of the will, must control.

4. Courts, in construing a will, may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such a departure is necessary to give effect to what appears, on a full view of the whole will, to have been the intention of the testator.

5. When a testator has made known his purposes respecting the testamentary disposition of his property, by the use of plain and unambiguous language, though his purposes may seem unreasonable, unjust or absurd to others, his will is its own expositor and a law unto the court.

---

On final hearing on bill, answer and proofs.

*Mr. Theodore Runyon,* for the complainants.

*Mr. John W. Griggs,* for Frederick McCully et al.

*Mr. John W. Taylor,* for Frederick Ball et al.

VAN FLEET, V. C.

Two questions are presented for decision. They grow out of the will of James Marshall, deceased. His executors ask for a construction of his will. They are in doubt as to their duty, and they ask for instruction in order that they may perform it with safety to themselves and justice to the persons whose rights are involved in doubt.

The first question, stated generally, is, Whether or not a devise of land, upon which the testator held a mortgage, passes the mortgage and the debt secured by it to the devisee? The devise which the executors ask to have construed is in these words:

"I give and devise to my sister Rachel Walker my house and lot in Lacon, Illinois, for and during her natural life, and at her death, to her daughter Caroline Buckland, to her and her heirs, forever."

Marshall's Exrs. *v.* Hadley.

Neither at the time he made his will, nor at the time of his death, did the testator own a house and lot, or any land, in Lacon, Illinois, but he did in 1874. In that year he conveyed a tract of land he owned there to his sister Rachel, and she, to secure the payment of a part of the purchase-money, gave him a mortgage for $210, which he still held at the time of his death. Unless this mortgage operated as a conveyance of the land described in it, so that the testator, by force of the mortgage, became the beneficial owner of the land for all purposes, it is clear, that nothing passed by the devise, for the thing given is land, and not the debt which the land stood pledged to pay. By force of a mortgage the mortgagee does not acquire the land as owner, but simply acquires a right to hold it as security for his debt, and the utmost dominion that he can exercise over it is either to appropriate it or have it appropriated to the payment of his debt. The respective rights of the mortgagee and mortgagor in the mortgaged land were defined by Chief-Justice Beasley, in *Wade* v. *Miller, 3 Vr. 296, 303,* as follows: "Such an interest," meaning the interest conveyed by mortgage, "will not make the mortgagee a freeholder; if he enters and holds the property, he is obliged to account to the mortgagor, as the owner, for the rents and profits; if the money due on his bond is paid to him, his connection with the land is dissolved, for there is no necessity for a reconveyance; and at his death the mortgage interest passes to his representative as personalty. In these, and in all other particulars, the land seems to be a mere pledge in equity for the payment of the debt. It is true he may maintain ejectment and enter upon the possession, but this right springs into existence in a controversy between him and the mortgagor, and even after he enters he is placed in the attitude of bailiff of the mortgagor rather than of owner. Such right, so devoid of all the incidents of property, can scarcely be called an estate in land. But, on the contrary, the interest of the mortgagor carries with it almost all the qualities and concomitants of ownership. The rents and profits of the land are his; he acquires all the privileges incidental to the possession of a freeholder; the land can be sold for his debts under execution; his interest in it will support dower, and upon

his death intestate it descends to his heirs at law." This exposition of the law makes it entirely clear that the testator was not the owner of the land which he attempted to devise, and also that he had no such interest or estate in the land as could be made by him the subject of a devise under the name or description of land. According to the plain words of his will, his purpose was to give land and not a debt or a security for a debt. The law divides all property into two kinds, real and personal, and one of its primary objects is to prescribe certain positive rules by which the one class or kind may be distinguished from the other. Without thrusting aside these rules, as without force, it cannot be held that a testator, when he devises a house and lot, means that the devisee shall take a mortgage.

The second question asked by the executors calls for a decision as to who are the testator's residuary legatees; or, stated in another form, among whom did the testator mean his residuary estate should be divided. Eighteen different persons are named as legatees or devisees, either primarily, secondarily or contingently, before the gift of the residue is made. To fourteen a direct gift is made either of a certain sum of money, or of the income of a certain sum, or of a specific chattel. The gift to each is unconditional and absolute, thus making them primary legatees, with definite and fixed rights. The gifts of specific sums range in amount from $20,000 to $250. The fifteenth of the eighteen is Eliza Marshall, and the gift to her is made in this form : $5,000 is directed to be invested and its income paid to her husband, Garrett Marshall, during his life, and then the will says: "And in case Garrett dies before his wife Eliza, the said income shall be paid to her by my executors so long as she shall live." The sixteenth and sevententh are Florence Ball and Belle Ball. They are contingent devisees of a house and lot, which the testator devised to his widow for her life, with remainder in fee to Freddie Ball, provided he survives the widow. But in case he does not survive the widow, the house and lot are then devised to either Florence or Belle in these words :

"Should said Freddie die before my wife, the premises shall go, at my wife's death, to Florence Ball and her heirs forever; and in the event of the death of both Freddie and Florence before the death of my wife, the said premises shall go, at my wife's death, to Bell Ball and her heirs forever."

The last of the eighteen persons is Caroline Buckland, to whom, it will be remembered, the testator, by the devise already considered, attempted to give the remainder in fee of a house and lot in Lacon, Illinois, which, it is evident from the language of the devise, he supposed he owned. The gift of the residue follows the bequests and devises made to the eighteen persons named as legatees or devisees. It is the last provision of the will by which the testator makes any disposition of his estate; and these are its words:

"All the rest and residue of my estate, both real and personal, wheresoever situate, I give, devise and bequeath *to the several legatees and devisees hereinbefore named,* to be divided between them equally, share and share alike."

The question is, Whether, by force of these words, each one of the eighteen persons named in preceding parts of the will is entitled to take a share of the residue, and if not, which of them are, and which are not? The quantity or amount that each will be entitled to take is unalterably fixed and free from doubt. They take equally, " share and share alike." The division must, therefore, be by equal shares, no matter how small or how large the first or primary gift may be.

The question is not what did the testator intend to do, or suppose he had done, aside from the language of his will, but it is, on the contrary, what has he said he wanted done with his property? To answer this question the whole will must be read and all its provisions must be carefully considered, and then such construction must be adopted as will give effect, if possible, to every word in it. If by the use of plain and unambiguous words he has made his meaning clear and certain, his will expounds itself, and all the court can do or has power to do is to give effect to his purposes. All doubts must be resolved in favor of the testator's having said exactly what he meant, and plain, clear words, understood in their ordinary sense, must always control,

Marshall's Exrs. *v.* Hadley.

unless repugnant to other words used in another part of the will. *Burnet* v. *Burnet, 3 Stew. Eq. 595, 597.* This doctrine has been called a cardinal rule, and also a rule of common sense. Lord Wensleydale, in *Abbott* v. *Middleton, 7 H. L. Cas. 68, 114,* stated it in this form : "It is now, I believe, universally admitted that in constructing a will the rule is to read it in the ordinary and grammatical sense of the words, unless some obvious absurdity, or some repugnance or inconsistency with the declared intention of the testator, to be extracted from the whole instrument, should follow from so reading it. Then the sense may be modified, extended or abridged so as to avoid those consequences, but no further."

The persons whom the testator meant should take his residuary estate are described, not by their names or other individual designation, but as " the several legatees and devisees hereinbefore named." Each of the eighteen persons already referred to had been named, in the preceding parts of the will, as a legatee or devisee, either primarily, secondarily or contingently, so that they all come directly and indisputably, within the unquestionable meaning of the words describing the persons whom the testator meant should take the residue of his estate. The phrase, " the several legatees and devisees hereinbefore named," understood in its ordinary and grammatical sense, embraces undeniably all who had before been named, whether they were named as unconditional legatees or devisees, or only as possible or contingent legatees or devisees. The words " hereinbefore named " constitute an essential and vital part of the description of the persons to whom the testator intended to give his residuary estate, and so long as they stand the court must give them full effect, no matter how absurd or unreasonable such intention may appear to others to be. I think it was Sir Lancelot Shadwell who said, that it was the inalienable privilege of every Englishman to indulge in any nonsense he pleased in disposing of his property by will, provided he did not attempt to devote it to an immoral or unlawful purpose. The same privilege exists here and may be freely exercised.

Marshall's Exrs. *v.* Hadley.

It was suggested, on the argument, that the court might very properly, in construing this will, disregard or reject the words "hereinbefore named" as "redundant surplusage." There can be no doubt that it is within the power of the courts, in construing a will, to depart from its strict words when that course is necessary in order to give effect to the intention of the testator. As for example, "or" may be read as meaning "and," and "and" may be read as meaning "or;" and there are other instances in which the strict meaning of a word or phrase has not been followed, but such departures are never made except that it is manifest that in no other way can effect be given to what clearly appears, on a full view of the whole will, to have been the intention of the testator. But this rule, as is perfectly obvious, has no application whatever to this case. To attempt to apply it would serve to defeat rather than to give effect to the intention of the testator. An attempt to apply it, if it had any effect at all, would tend to render ambiguous and obscure what is now plain, clear and certain. No rule of construction is better settled, nor more thoroughly rooted in justice and good sense, than that which declares that where a testator has told, in plain words, what disposition he intended to make of his property, his will must be executed, and the courts have no power or right, in such a case, to resort to a fanciful or conjectural construction grounded on his situation, circumstances or condition, or that of his family or property. When a testator has made known his purposes, in respect to his property, by the use of plain and unambiguous language, though his purposes may seem unreasonable, unjust or absurd to others, his will is its own expositor and a law unto the court. To refuse to give effect to his purposes, in such a case, is not to construe his will, but to make a new will for him. It is to be presumed that every testator has made just such a disposition of his property as he wanted to make and as he thought it was proper to make, and that, in framing his will, he expected and desired that its construction would be settled and determined by those general rules which have been established by law for the interpretation of such instruments. *Davison* v.

*Rake*, 18 *Stew. Eq.* 767, 771; *Bonnell* v. *Bonnell*, 2 *Dick. Ch. Rep.* 540, 546.

In my judgment, each of the eighteen persons named as a legatee or devisee, in those parts of the will which precede the residuary clause, is entitled to an equal share of the testator's residuary estate.