HARRISON H. VOORHEES, receiver, &c.,

*v.*

HORACE F. NIXON et al.

[Submitted March 13th, 1907. Decided March 15th, 1907.]

1. In a suit by the receiver of a corporation to set aside a mortgage given by the corporation in part payment for land sold to it by the wife of the president, it appeared that the wife purchased the land for $450 and sold it to the corporation for $3,000; that the president was the moving spirit in the organization of the corporation, and that but three of the five directors were present at a meeting at which the resolution for the purchase was passed, and that at such meeting the wife was elected secretary; that no notice of the first meeting of the directors was given and no waiver of notice executed. It was shown that when an application was made for the appointment of a receiver of the corporation, the wife pledged the mortgage to raise money to contest the receivership, and that thereafter she sold it and applied part of the proceeds to the husband's uses.—*Held*, that the facts warranted an abatement of the mortgage, except as to the amount which the wife had paid for the land.

2. In a suit by the receiver of a corporation to set aside a mortgage given by it to the wife of an officer, it appearing that practically all of the stockholders had been ignorant of the facts on which the right to relief was based, and that they had been deceived by the officer in question, no laches could be imputed.

3. The assignee of a mortgage securing a bond takes it subject to all defences to the bond, whether with or without notice, as the mortgage is a mere incident of the debt.

4. Where a corporation executed a mortgage to the wife of the president in part payment for land sold to the corporation by her, and thereafter the corporation was restrained from transferring any of its property rights, which was known to one who purchased the mortgage, and without any action of the board of directors authorizing it, the president and his wife, as secretary of the corporation, executed in the name of the corporation, at the instance of the purchaser, a declaration against offsets, such instrument was no bar to the assertion by the corporation's receiver of defences against the mortgage, on the ground that the execution thereof arose from a violation of a fiduciary relation.

On final hearing on pleadings and proofs.

The bill is filed by the receiver of the Ocean Crest Hotel Company, an insolvent corporation, to test the validity of a mortgage which was given by that corporation in part payment for land sold to the corporation by defendant Mrs. Lillie M. Malott. Horace F. Nixon is made a defendant as the present holder of the mortgage. The land in question was conveyed to the corporation by Mrs. Malott, pursuant to an agreement for that purpose made at the organization meeting of the corporation for the price of $3,000, of which $1,000 was paid in stock of the corporation at par and $2,000 by the execution of the mortgage now in question on the land conveyed. Mrs. Malott was secretary of the corporation and H. J. Malott, her husband, was president and a director. The theory of complainant's suit is that the fiduciary relations which existed between the Malotts and the corporation rendered the contract violative of the established principles controlling trusteeships, and that the contract should be set aside to the extent of charging against the mortgage the difference between the amount which Mrs. Malott paid for the property and the amount for which she sold the property to the corporation.

*Mr. Lewis Starr,* for the complainant.

*Mr. James B. Nixon,* for the defendants.

LEAMING, V. C.

It must be regarded as the settled policy of the law of this state that express contracts between a corporation and one of its directors are voidable at the instance of the corporation. When the transaction is one in which there arises by operation of law obligations co-extensive with the contract, as would be the case in the loan of money by a director to his corporation, it is manifest that no reasonable objection can be found to the transaction, but where the right must find its support in the convention it will not be sustained as a right. The underlying reason for the rule is that it is the duty of a director to represent the interests of his corporation, and that duty cannot be impartially performed when he contracts with it in his own behalf. I under-

stand this to be the rule as defined by the court of errors and appeals in *Stewart* v. *Lehigh Valley Railroad Co., 38 N. J. Law (9 Vr.) 505, 522.* There are cases which hold that where the transaction is fair and open the contract may be supported, but such cases, when applied to contracts between a director and his corporation, are clearly in conflict with the principles of the case above cited. When the contract has been executed and the parties cannot be restored to their original position, I take it to be the duty of a court of equity to decree such relief as will place the parties as nearly as possible in the position where they stood at the time the voidable contract was made.

The contract of sale in this case, however, was made between the corporation and Mrs. Malott, who was not a director, but was the wife of a director. I entertain the view that the policy which forbids a contract between a corporation and its director necessarily includes a director's wife. A trustee, or an agent to sell lands, could not properly be permitted to make sale of the trust property to his wife. Irrespective of the husband's interest in his wife's property, present or prospective, his interests in her welfare would, in such cases, necessarily interfere with an impartial exercise of his duties to his trust. A contract made by a trustee to purchase lands owned by his wife would, in like manner, operate as a strain upon his duties to his trusteeship. See *Reed* v. *Aubrey, 91 Ga. 435,* and cases there collected. If, therefore, a contract between a corporation and its director is to be deemed voidable, a like contract between a corporation and the wife of a director should stand upon the same plane. I entertain the view that the contract of sale from Mrs. Malott to the corporation was, on these grounds, voidable at the option of the corporation.

I reach this conclusion with perhaps greater freedom than I should otherwise exercise by reason of the fact that other considerations in this case lead me to the same result. October 7th, 1905, Mrs. Malott contracted with a land company for the purchase of the two lots which were afterwards sold by her to complainant corporation. By her contract of purchase she took the lots at a valuation of $450 per lot, but a clause in the agreement made the entire purchase price $450 in case she built on the

property purchased, pursuant to the agreement, by September 1st, 1906. The $450 payment was completed by her October 25th, 1905. Complainant corporation was formed in December, 1905, for the purpose of acquiring these lots and erecting thereon a hotel. In the formation of the corporation Mr. Malott was the moving spirit. He associated with him four incorporators and filed the certificate of incorporation with the secretary of state, December 13th, 1905. Of the $1,000 capital stock with which the company was to commence business Mr. Malott subscribed for $500. He prepared minutes for the incorporators' organization meeting and for the first directors' meeting in advance of the meetings, and submitted them to his co-incorporators in Philadelphia. The following day, December 21st, 1905, three of the five incorporators met in New Jersey and adopted these minutes as already prepared. These minutes of the organization meeting included the adoption of a set of by-laws, the election of the five incorporators as directors and the passage of a resolution for the purchase of the lots in question for $3,000, payable as already stated. The minutes of the first directors' meeting, prepared in advance, were also adopted. These minutes included the election of Mr. Malott as president of the board and Mrs. Malott as secretary, and also the approval of the resolution for the purchase of the lots from Mrs. Malott. While the minutes recite that the five directors were present, only three were, in fact, present. No notice of this first meeting of the board of directors was given and no waiver of notice was signed. From the testimony it is apparent that Mr. Malott was the dominating factor throughout. I am entirely satisfied that no proceedings touching the purchase of these lots can be properly said to have been a genuine exercise of a discretion upon the part of a board of directors of the corporation. The proceedings were conceived and carried into execution by Mr. Malott with a free hand, and do not, in my opinion, in any proper sense represent the deliberative exercise of an intelligent or independent judgment of a board of directors. Whether the members of the board, other than Mr. Malott, knew that the lots for which they were paying $3,000 had cost but $450 does not appear, but one member of the board testified that the matter was not mentioned. All this

may be unimportant if it be assumed, as a fact, that Mrs. Malott was dealing with the corporation as an independent principal touching her own property, and that, as the wife of a director, she was privileged to do so, but I am not prepared to find as a fact that, as between Mr. and Mrs. Malott, this property was purchased by her from the land company in her own interest. When she made the contract of purchase of these lots and agreed to pay $450 for them and to erect a building upon them costing not less than $2,000, her sole resources were $508.03 which she had in a bank. When an application was made for the appointment of a receiver of complainant corporation she pledged the mortgage now in question to raise $300 to enable Mr. Malott to contest the receivership. Later she sold the mortgage and applied part of the proceeds of sale to Mr. Malott's uses. I incline to the view that, as between them, the contract of purchase of these lots was probably in his interest as much as in hers, and that she cannot properly be treated as having been an independent owner of the lots at the time of the sale to complainant corporation. I find it impossible to view the transaction other than as one essentially between Mr. Malott and his corporation, and as one in which no independent judgment of a board of directors has been exercised.

It is urged that the corporation has not promptly asserted its rights to avoid the contract. The testimony discloses that much if not all of the capital which came into the corporation by the sale of stock to new stockholders after the organization meeting was procured through misrepresentations of fact by Mr. and Mrs. Malott touching this very transaction. These new stockholders have testified that both Mr. and Mrs. Malott represented to them that Mrs. Malott had sold five instead of two lots to the corporation, and that they remained under that belief until the contrary was disclosed by a search of title made after the insolvency of the corporation. The bill in this case was originally filed under the claim that Mrs. Malott had in fact contracted to sell five instead of two lots, and had failed to convey the remaining three. Both Mr. and Mrs. Malott deny having made these representations, but the evidence is strongly against them as to that fact. Under these circumstances it is manifest that no

laches can be imputed, for practically all of the stockholders who were entitled to relief were ignorant of the facts. ·

The contract of sale having been subsequently executed by a conveyance to the corporation, and a hotel having been built on the property, the parties cannot now be placed in their original positions. It becomes necessary, therefore, to restore to Mrs. Malott what she is rightfully entitled to. She paid for the contract of purchase which she sold to the company $450. · It is claimed that when she sold it to the company it had greatly enhanced in value by reason of certain developments in the land company enterprise. The claim that it increased in value from $450 to $3,000 in less than three months cannot be seriously entertained. It may have increased in value in some degree, but I cannot conclude that its enhancement in value during that time was of such substantial amount that Mrs. Malott can at this time, under the circumstances of this case, become equitably entitled to more than the amount which the contract cost her, with interest on that amount.

It remains to be considered whether defendant Nixon, as present owner of the mortgage, enjoys rights superior to those which would be extended to Mrs. Malott as owner of the mortgage. The mortgage was assigned to defendant Nixon as security for a fee of $300 for defending the application for a receiver of complainant corporation. Later, and after Mr. Nixon had been informed that defences existed to this mortgage, he purchased it absolutely at a valuation of fifty per cent. of its face value, paying for it $700, in addition to the $300 owing to him as a fee. Even as an innocent purchaser of a negotiable instrument he could not, under these circumstances, claim protection beyond the $300 originally loaned. But the assignee of a mortgage securing a bond takes it subject to all defences to the bond, whether with or without notice. "The mortgage is a mere incident of the debt which it is intended to secure, and a defence to the debt is a defence to the mortgage." *Magie* v. *Reynolds, 51 N. J. Eq. (6 Dick.) 113, 117.* Before making the loan of $300 on the mortgage defendant Nixon procured a declaration against offsets executed in the name of complainant corporation, and this is urged as an estoppel against complainant. This declaration

against offsets was executed by Mr. Malott as president and Mrs. Malott as secretary of the corporation without any action of the board of directors authorizing it, and at a time when the corporation was under restraint, by order of this court, from transferring any of its property rights, and Mr. Nixon at that time knew of that restraint. It is clear that this instrument cannot be treated as a bar to the assertion of any defences which complainant corporation at that time had against the mortgage.

The receiver of the corporation urges that the entire abatement from the contract price should be charged against the mortgage. I cannot accede to that view. I think the $450 and interest, which is to be restored, should be allowed to stand as due on the mortgage, and that the decree should adjudge that amount as due on the mortgage, and no more. I will so advise.