The essential question for decision is whether the complainant-mortgagee-purchaser of mortgaged lands at a judicial foreclosure sale and his grantee in possession, under a deed of general warranty, may have strict foreclosure against a junior mortgagee not made a party to the foreclosure proceedings, due to the non-disclosure of the latter's recorded assignment of the mortgage on the title search made on complainant's behalf for the purpose of discovering — preparatory to the foreclosure — the interests to be barred. Concededly, complainant *Page 406 
did not possess actual knowledge of the identity of the holder of this outstanding interest; and it is stipulated that its omission from the search was the result of "inadvertence and mistake" on the part of the person so retained to prepare it. The search disclosed the mortgage; and the grantee was made a party, but did not answer. Her apparent equity of redemption was foreclosed by the decree.
The lands were struck off and sold to the complainant on a bid of $100, at a sheriff's sale held on December 17th, 1935. The deed of conveyance to complainant, pursuant to the order confirming the sale, was made on January 3d 1936; and complainant entered into possession. On March 27th, 1936, while still without knowledge of Camp's interest under the mortgage adverted to, complainant conveyed the lands to the defendants Reinert, who paid to complainant the full purchase price in cash and entered into possession and have since been in continuous possession.
Proceeding on the theory that it had the requisite interest by reason of its taking possession of the lands under the sheriff's deed in foreclosure and its liability under the warranty contained in its subsequent deed of conveyance, complainant filed this bill for strict foreclosure against the defendant Camp. The answer interposed pleaded complainant's conveyance of the lands to the Reinerts and the payment of the full purchase price in cash, and its lack of "interest in" or "lien upon said premises." Thereupon, the bill was amended to join the Reinerts as parties defendant; and, by an answer admitting the essential allegations of the bill, they joined "in the prayer" thereof, and, in the event that defendant Camp should be decreed "to pay to the complainant the amount due on its mortgage, with interest and costs," and "to redeem said mortgaged premises," they tendered a reconveyance of the title to complainant, "in order that such redemption may be possible."
The learned vice-chancellor ruled that "the right to strictly foreclose" is limited "to a purchaser of the mortgaged premises at sheriff's sale who is in possession" thereof "under the sheriff's deed," and he accordingly dismissed the bill. He *Page 407 
regarded "the right to maintain a second suit on a mortgage — a strict foreclosure — " as one "which equity awards to a mortgagee only so long as it is necessary to aid him after condition broken, in taking and holding possession of the mortgaged premises under his mortgage or a judicial sale at which he is obliged to purchase" — one that dies "when that has been accomplished;" and he held that complainant's right, "until it was lost," was "purely equitable and maintainable against Camp alone," and that "the right of action of the Reinerts, if any, is purely legal and maintainable against" complainant alone. We do not entertain this view.
A strict foreclosure is a procedure designed to extinguish the equitable right of redemption, the creation of the English court of chancery in early times to mitigate the rigors of the common law conception of a mortgage as a conveyance of the legal title upon condition in the nature of a defeasance, i.e., the payment of the debt on the very day stipulated, in default of which the conveyance ipso facto became absolute and the mortgagee's estate ripened into an indefeasible legal title in consonance with the terms of the conveyance. Under the common law formalism, the mortgagee, upon the execution of the mortgage, became vested with the fee to the land, and, upon default in payment, the right of possession; and the mortgagor had no estate or interest therein, and no right of possession, after default in the payment of the mortgage money. The mortgagee's remedy was by ejectment, and in a court of law the mortgagor could not plead, after default, that he was willing and ready to pay the debt.
The equitable view, considered by Professor Pomeroy as "the most magnificent triumph of equity jurisprudence over the injustice of the common law," found permanent lodgment in English equity in the reign of Charles I; and, while it was termed in the early years of its development a "mere right" to recover the land in equity after default in the performance of the condition, it eventually came to be regarded in English equity jurisprudence as an estate in the land, subject to devise, grant and entailment. Out of this grew the remedial process of strict foreclosure, still in vogue in England, *Page 408 
although not the only form of foreclosure since the enactment of the Chancery Improvement act. 15 16 Vict. ch. 86 § 48. Its object is to bar the equity of redemption. The mortgagee's title after such foreclosure is that conveyed by the mortgage free and discharged of the condition of defeasance; hence, it is inconsistent with the theory that a mortgage creates a mere equitable lien, without conveying the legal estate. This right of redemption is an application of the equitable principle of relief against legal penalties and forfeitures, where a money award will suffice as compensation to the person seeking to enforce them. This process proceeds on the principle that equity, having relieved the mortgagor from the forfeiture resulting from his default in the performance of the condition, should require him to perform it within a reasonable time or be forever barred of the right of redemption. A decree of strict foreclosure does not operate to extinguish the debt, unless the mortgaged lands are of sufficient value to satisfy it. The value of the property may be ascertained in the event of a suit at law upon the mortgage debt.Parker v. Child, 25 N.J. Eq. 41; Champion v. Hinkle, 45 N.J. Eq. 162;Pettingill v. Hubbell, 53 N.J. Eq. 584; Blue v.Everett, 56 N.J. Eq. 455; Shepard v. Barrett, 84 N.J. Eq. 408;Kendall v. Treadwell, 14 How. Prac. 165; Pom. Eq. Jur. (4thed.) §§ 162, 1227; Jones on Mortgages (8th ed.) §§ 1960,1961, 1963, 1993, 1998.
While some of the early cases in this state subscribe to the English view, both as to the common law literalism and the equitable doctrine devised to relieve of its harshness, our courts, regarding more the essence than the form of the transaction, ultimately laid down the principle that the mortgage did not vest in the mortgagee an immediate estate in the lands, with the right of immediate possession, defeasible upon the payment of the mortgage money, but merely gave him a right of entry on breach of the condition, in which event his estate has all the incidents of a common law title, including the right of possession subject to the equity of redemption, and, meanwhile, the mortgagor is treated as the owner of the lands for all purposes. Montgomery v. Bruere, 4 N.J. Law *Page 409 300; Ibid. 5 N.J. Law 1018; Sanderson v. Price,21 N.J. Law 637, 646 note a; Osborne v. Tunis, 25 N.J. Law 633; Shields v.Lozear, 34 N.J. Law 496, 503; Verner v. Betz, 46 N.J. Eq. 256;Devlin v. Collier, 53 N.J. Law 422; Cummings v. Jackson,55 N.J. Eq. 805; Blue v. Everett, supra; Perkins v. TrinityRealty Co., 69 N.J. Eq. 723, 727; affirmed, 71 N.J. Eq. 304;Voorhees v. Nixon, 72 N.J. Eq. 791; affirmed, sub nom.,Voorhees v. Malott, 73 N.J. Eq. 673; Stewart v.Fairchild-Baldwin Co., 91 N.J. Eq. 86; J.W. Pierson Co. v.Freeman, 113 N.J. Eq. 268; Wade v. Miller, 32 N.J. Law 296;Kircher v. Schalk, 39 N.J. Law 335; Woodside v. Adams,40 N.J. Law 417; Jersey City v. Kiernan, 50 N.J. Law 246;Marshall v. Hadley, 50 N.J. Eq. 547. And so, in consonance with equity's treatment of a mortgage as essentially a security for the payment of the debt, foreclosure by judicial sale supplanted strict foreclosure as the more equitable mode of effectuating the mutual rights of the mortgagor and mortgagee. This is upon the theory that the mortgagor, in the case of a sale, receives "the full value of the property by the payment of the debt and receipt of the surplus." Jones on Mortgages§ 1994. It is now a statutory requirement where a bond and mortgage are given for the same debt. Comp. Stat. 1910 pp. 3420et seq.; Rev. Stat. 1937, 2:65-1 et seq.
Yet strict foreclosure is still an appropriate remedy where, in the special circumstances, it will subserve equity and justice. This is particularly the case where, through the customary foreclosure by judicial sale or a conveyance by the mortgagor, the legal and equitable estates have become united in the mortgagee, who is also in possession under his legal title, and some outstanding junior interest has not, by reason of pure inadvertence, not aggravated by bad faith, been barred by the decree. Such is the established practice in this state.Eldridge v. Eldridge, 14 N.J. Eq. 195; Benedict v. Mortimer,8 Atl. Rep. 515; Lockard v. Hendrickson, 25 Atl. Rep. 512;Parker v. Child, supra; Shepard v. Barrett, supra. And it has been held, although it is not necessary to a decision of this case, that it may also be invoked where the mortgage *Page 410 
has been given for the entire purchase price, and the value of the land does not exceed the amount of the mortgage. Shepard v.Barrett, supra; Wilson v. Geisler, 19 Ill. 49. Likewise, it has been declared to be a proper course of procedure where the mortgage is in the form of an absolute deed of conveyance, without written defeasance, and the grantee-mortgagee is in possession, although foreclosure by sale is usually deemed to be the remedy better designed to safeguard the essential interests of the parties; and also where the vendee has failed to make the payments stipulated in a contract for the sale of land. Jones onMortgages § 1963; Pom. Eq. Jur. § 1227, note.
Viewing the case at hand in the light of these principles, we hold to the view that strict foreclosure is an entirely appropriate remedy for the accommodation of the mutual rights and obligations of the parties. Camp's interest in the lands is purely equitable in nature; it has no standing at law. The purchaser of the mortgaged lands at a foreclosure sale, "takes the place of the mortgagee in proceedings in strict foreclosure at common law. His title relates back to the time of the execution of the mortgage. He succeeds as well to the title and estate acquired by the mortgagee, by the delivery of the mortgage deed, as to the estate the mortgagor had at the time of the execution of the mortgage." Champion v. Hinkle, supra. To the same effect are Pettingill v. Hubbell, supra; Parker v.Child, supra; Eldridge v. Eldridge, supra. The equity of Camp, as the junior mortgagee, is to "redeem the encumbrances (sic) prior to the second mortgage, and to an account to that end from the complainant of the rents and profits since the latter has been in possession." Parker v. Child, supra.
Nor does it matter that complainant has sold and conveyed the title in fee to the Reinerts. As stated, the sheriff's conveyance to complainant was made on January 3d 1936. Complainant thereupon entered into possession, and on March 27th, 1936, conveyed and delivered possession of the lands to the Reinerts. The bill herein was filed on the ensuing June 1st. The case ofBenedict v. Gilman, 4 Paige 58, is analogous. *Page 411 
There the mortgagee-purchaser at a foreclosure by judicial sale made conveyance, after the sale, of "all his interest, both in the mortgages and in the mortgaged premises," to a third party, and "received from him the whole amount due on the mortgages including the costs of the foreclosure." Subsequently, the grantee filed a bill for strict foreclosure against intervening judgment creditors who had not been made parties to the foreclosure suit, and who had refused his offer to permit them to redeem by payment of the amount of the mortgages, including the costs of the foreclosure. Chancellor Walworth decreed strict foreclosure; and, in so doing, he also held that, in view of the complainant's ignorance of the existence of the judgments, "it would be inequitable and unjust to give the defendants the benefit" of permanent improvements made by complainant-grantee, "without compelling them to pay an equivalent therefore," but that a different case would be presented "if the complainant had made the improvements with a full knowledge of the defendant's equitable right to redeem."
While there was, in the case cited, a legal assignment of the mortgage, it can hardly be gainsaid that equity may, without departing from its proper sphere of action, proceed in the case at hand to give relief against so obvious an injustice on the assumption of an equitable assignment of the mortgage as an incident of the conveyance. In the special circumstances, equity demands that the mortgage be regarded as continued in existence, with its lien unimpaired, and assigned with the conveyance for the benefit and security of both the mortgagee-purchaser and its grantee. This fiction is grounded in reason, equity and justice. It has been indulged, for the purpose of doing equity, even where the parties have evidenced their intention to liquidate the mortgage by a written receipt, and sometimes where the mortgage itself has been actually discharged and satisfied of record.Pom. Eq. Jur. §§ 147 et seq., 1211. Equitable remedies "are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; *Page 412 
the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." Pom. Eq. Jur.§ 109.
A lack of precedent, or mere novelty in incident, is no obstacle to the award of equitable relief, if the case presented is referable to an established head of equity jurisprudence — either of primary right or of remedy merely. Vanderbilt v.Mitchell, 72 N.J. Eq. 910; Van Duyne v. Vreeland, 12 N.J. Eq. 142.
And it is an ancient field of equity jurisprudence to relieve against the consequences of accident and mistake of fact — not to mention its jurisdiction over equitable titles and interests created by mortgage — where, in the furtherance of justice, that course may be taken without disregard of an equal or superior equity, particularly where one has thereby acquired, at the expense of the complaining party, a legal right which in good conscience he should not retain. It is the general rule that a deed from the purchaser at a foreclosure sale to a third person transfers to the grantee all the title and rights of the original purchaser, subject to any outstanding equity of redemption. 42C.J. 267. See, also, Parker v. Child, supra.
But we need not pursue the particular inquiry. Mere slavish adherence to fixed rules and technical considerations has nothing to commend it, if thereby justice is to be so plainly sacrificed. While it has received the full purchase price, complainant nevertheless is liable to the grantees on its warranty of title; and where, as here, the grantees join in the prayer of the bill, and tender a reconveyance of the property, so as to permit of redemption by the holder of the intervening equity, there is no reason on principle why a strict foreclosure should not be had. There is in these circumstances a unity of interest between the mortgagee-purchaser at the foreclosure sale and its grantees that serves to justify the equitable relief afforded by a strict foreclosure, invoked as it was within a reasonable time, and before detriment had been suffered by the junior mortgagee, or the rights of others had intervened. This remedy is available *Page 413 
because appropriate to protect the common interests, without substantial infringement of the outstanding equity of redemption. That course will do full equity to all the parties. It would be manifestly inequitable and unjust to subject the title so acquired by complainant in virtue of its mortgage, and conveyed to the Reinerts, to the mortgage held by Camp merely because, through the oversight of the person engaged to search the title, he was not made a party to the foreclosure proceedings. In the view of the learned vice-chancellor, the effect of the conveyance to the Reinerts was to extinguish in their entirety complainant's rights under its mortgage, and thus to make Camp's mortgage a first lien upon the lands, even though complainant and its grantees have acted throughout in the utmost good faith, and the rights of the junior mortgagee, as such, have in no sense been impaired.
It is the function of equity to protect complainant in the enjoyment of the fruits of its contract, and to prevent the unconscionable advantage thus sought by Camp. The decree under review plainly constitutes a frustration of the contract — the destruction of a substantial property right, without even a semblance of justification. As stated, neither the complainant nor its grantees are chargeable with laches, or delay that might well be termed unreasonable. Nothing has occurred to give Camp an equal or superior equity; nor is that claim made. Complainant's intrinsically superior equity under its mortgage has not been impaired, and it should therefore be enforced.
It suffices to add that, under rules 6, 7 and 13 of schedule A of the Chancery act of 1915 (now rules 5, 6 and 12, respectively, of the court of chancery), the Reinerts were properly joined as parties, so as to invest the chancellor with jurisdiction to grant strict foreclosure for the protection of the common interest.
It is not suggested that Camp is entitled, at his option, to a foreclosure by judicial sale as an incident of his contract, secured by the act of 1880 (Comp. Stat. pp. 3420 et seq.; Rev.Stat. 1937, 2:65-1 et seq.), and the question is therefore not before us. The sole defenses interposed were that complainant *Page 414 
mortgagee had been fully paid and satisfied, and that, moreover, in virtue of the conveyance to the Reinerts, complainant is without the interest essential to sustain the suit. Assuming the right to foreclose, he does not challenge the propriety of strict foreclosure; he denies the right of foreclosure in toto. It is pertinent to note that the lands were sold to complainant on its nominal bid of $100, and that it is not suggested another sale would yield more than sufficient to satisfy complainant's mortgage — a vain hope, in view of the long continued depression of the real estate market, consequent upon the general economic crisis. The pleadings raise no such issue; nor was it litigated below.
The decree is accordingly reversed; and, the facts having been stipulated, the cause is remanded with direction to enter a decree in conformity with this opinion.
For affirmance — PERSKIE, J. 1.
For reversal — THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 14. *Page 415