In the month of December, 1929, complainant set up a life insurance trust in which she named the defendant, Bankers Trust Company of New York, trustee (Exhibit *Page 353 C-1). At the time of the creation of the trust the complainant was a resident of Englewood, New Jersey. She is now a resident of Manchester, Vermont. Under the trust agreement complainant assigned and transferred $800,000 of life insurance policies upon the life of her husband, and securities of the market value of about $148,000. In the year 1934, the insurance policies were reduced to $430,000. On or about October 16th, 1945, at the hearing of this proceeding, the trustee filed its account which showed the market value of the securities to be approximately $407,878.59.
Under the trust agreement the trustee was directed to pay the income to the complainant donor for life, and thereafter, to her husband for life, and at the death of the survivor of them, to divide the principal into shares for their children and descendants of deceased children. When the children arrive at certain ages they become entitled to a portion of the principal. Ultimately the principal is to be distributed to the descendants of the children, and if none, then to such as the children appoint by will, or in default of such appointment, to the donor's descendants, and if none, to certain collateral relatives of donor and donor's husband, and if none, to their lineal descendants, and if none, to Yale University.
There are nine infants who are contingent beneficiaries.
Until the year 1944, taxes levied against the income were paid by the trustee. In June of that year the trustee received a formal notice from the United States Treasury Department that application should be made for a refund of the tax paid by it on the 1941 income because of the provisions of the Internal Revenue Code (26 U.S.C.A., § 167), and a federal court decision to the effect that the donor of such a trust is personally liable for the tax on income therefrom. In re Frances S. Willson,132 Fed. Rep. 2d 255. (Exhibit C-2).
In accordance with the provisions of section 167 of the U.S. Internal Revenue Code, the complainant is now charged with liability for the taxes for the years 1941, 1942, 1943, 1944 and 1945. In the circumstances she seeks a modification of the trust agreement to permit the payment of the taxes out of the trust funds. This court by virtue of its inherent power can afford relief. *Page 354 
In New Jersey National Bank and Trust Co. v. LincolnMortgage and Title Guaranty Co., 105 N.J. Eq. 557;148 Atl. Rep. 713, the court said:
"Nor is there doubt as to the power of the court in the premises. It is of course quite true that ordinarily the trustee is bound, in the administration of the trust, by the terms of the trust, and that even this court has no right to authorize the trustee to depart therefrom; but it is also true that a court of equity, in its capacity as universal trustee, may in cases of emergency, for the preservation of the trust estate and the protection of the cestuis, authorize and direct the trustees to do acts which under the terms of the trust and under ordinary circumstances they would have no power to do. This power resides in the Court of Chancery as a part of its original inherent jurisdiction — its general administrative jurisdiction in cases of trusts."
The complainant and her husband testified to their prosperous circumstances when the trust agreement was created, and the subsequent adverse change in their financial status. The complainant's assets are approximately $30,000; while her husband's annual income about the time the trust was created was approximately $98,000. His annual income to-day is approximately $6,000.
Until the notice of June 29th, 1944, from the Treasury Department, notifying the trustee that the tax on the income derived from the estate was taxable to the complainant, rather than the trustee (Exhibit C-2), the trustee had paid all income taxes and it had done so continuously for thirteen years.
The changed financial circumstances of the complainant and her husband will make it impossible for complainant to meet the governmental obligation to pay the taxes aforesaid. The change in the law imposing the liability of the tax upon the donor, was unforeseen and not anticipated by her when she signed the trust agreement to safeguard the welfare of her children.
The trustee's accounting, filed on October 16th, 1945, shows capital gains in the years 1944 and 1945 which will increase the complainant's tax liability in excess of $75,000 *Page 355 
exclusive of interest. The complainant has not received and cannot receive any benefit under capital gains. From the trust she has received a total of $8,390.65 income. Covering the period of the administration of the trust there has been an increase incorpus from $148,023.33 to $407,878.59. The trust receives the benefit of the increase. The complainant does not. It is conceded by all the parties hereto that complainant, as donor of the trust, is liable for the payment of the taxes.
I feel that to deny the relief sought would be inequitable and that it would clearly defeat the purpose of the trust. Its maintenance would mean a continuous financial loss to the donor. As heretofore observed, the donor in creating this trust was primarily concerned with safeguarding the future welfare of herself and her children. Her financial means have been reduced beyond any reasonable expectation and due to a modification of the Internal Revenue Code, and its interpretation thereof by the federal court, an onerous monetary obligation is imposed upon her which, obviously, in her present circumstances, she cannot meet. All the parties hereto practically concede that. "A lack of precedent, or mere novelty in incident, is no obstacle to the award of equitable relief, if the case presented is referable to an established head of equity jurisprudence — either of primary right or of remedy merely." Sears, Roebuck Co. v. Camp,124 N.J. Eq. 403; 1 Atl. Rep. 2d 425.
The defendant trustee in its brief says: "It is anticipated that there will be thus due from her, for the years 1941, 1942, 1943, 1944 and 1945, taxes computed not only on income but also on capital gains in a very large amount of money. That complainant owes and/or will owe such taxes seems reasonably certain from the existing state of the law. Complainant's present personal financial circumstances are such that she is without adequate resources from which to meet such taxes."
The guardian ad litem for the infant defendants said in his brief that "the relief sought therein is, after considering all equities, not unjustifiable." The guardian believes it to be fair and equitable that the trustee be authorized to reimburse *Page 356 
the donor, as a necessary expense of the trust, for the taxes which she now has to pay and in the future will be compelled to pay by the ruling of the federal taxing authorities.
Counsel for Yale University said: "The defendant, Yale University, believes that the relief sought for is just and proper and that the court should permit the trustee to pay over to the complainant, sums equivalent to the amount of any taxes, penalties and interest, for which the complainant may have become liable or may become liable in the future, to the United States Treasury Department, or any state tax department, with respect to income earned by the said trust, and capital gains realized by the said trust."
I think the complainant is entitled to the aid of this court, and that she should be granted the relief she seeks; otherwise, the instrument she created as a protective measure, in effect, will stand as an oppressive implement to her. Part of the suggestion made by the defendant trustee in its brief and which the complainant finds acceptable is as follows: "There is but one workable and equitable formula which can be adopted, viz., such payments to the complainant from the trust should not exceed the amount of income taxes which would have been paid by the trustee if such taxes had been levied against the trust as a separate entity on the theory of taxation which was applied by the taxing authorities prior to the year 1941. Furthermore, such contributions out of the trust should be allocated between income and principal as was done by the trustee prior to 1941." This suggestion appears to be reasonable.
I shall advise an order to conform with the views herein expressed. *Page 357