VITO CAPABIANCO AND JULIA CAPABIANCO, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. JOHN L. BORK AND JOSEPHINE M. BORK, HIS WIFE, AND THE UNITED STATES OF AMERICA, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 19, 1970—Decided February 2, 1970.

Lewis, J. A. D., dissented.

Before Judges Goldmann, Lewis and Matthews.

*Mr. Frank W. Hoak* argued the cause for appellants (*Mr. Donald B. Jones,* attorney).

Respondents did not file a brief.

The opinion of the court was delivered by

Goldmann, P. J. A. D. Plaintiffs brought an action for partition, and defendants counterclaimed for subrogation to the rights of a prior mortgage and for strict foreclosure. Plaintiffs subsequently informed the trial judge that they would not participate in the case or oppose dismissal of their complaint.

The final judgment subrogated defendants to the rights of the First Federal Savings & Loan Ass'n of Clearwater, Florida, under a mortgage dated June 14 and recorded June 16, 1961, thereby entitling them to priority over the rights of plaintiff Vito Capabianco under a judgment he had recovered against one George Fink on September 25, 1961,

and also to priority over all rights conveyed to Capabianco by sheriff's deed dated February 3, 1967 following an execution sale under that judgment, including priority over any dower rights of Mrs. Capabianco. The subrogation granted was in the amount of $10,473.45, with 5¼% interest from March 2, 1966. The judgment declared the interest of defendant Federal National Mortgage Ass'n (FNMA) to be 100% of the debt, its interest being transferred to defendants Bork in proportion to and at the times that their principal payments on the $12,500 mortgage they had given on March 2, 1966, and then held by FNMA, reduced the mortgage principal below $10,473.45. Counterclaimants' request for strict foreclosure of the 1961 mortgage to which they had been subrogated was denied.

The facts are succinctly set out in the trial judge's opinion reported in 106 *N. J. Super.* 429, at 430–432, and because of their length are not repeated here. Reference may also be made to the facts in a prior suit, *First Federal Savings & Loan Ass'n of Clearwater, Fla. v. Fink,* 99 *N. J. Super.* 76, 77–81 (Ch. Div. 1968), wherein the substituted plaintiff, assignee of the 1961 mortgage, was held not entitled to summary judgment of foreclosure as against the Capabiancos, and the latter's motion for summary judgment dismissing the action was granted.

We agree with the trial judge's determination that FNMA was entitled to be subrogated to the rights of First Federal Savings & Loan Ass'n under the 1961 mortgage, and the Borks to subrogation under that mortgage to the extent of their payments of principal to FNMA.

In denying strict foreclosure the trial judge relied on *Sears, Roebuck & Co. v. Camp,* 124 *N. J. Eq.* 403, 118 *A. L. R.* 762 (E. & A. 1938), and quoted the following:

Yet strict foreclosure is still an appropriate remedy where, in the special circumstances, it will subserve equity and justice. This is particularly the case where, through the customary foreclosure by judicial sale or a conveyance by the mortgagor, the legal and equitable estates have become united in the mortgagee, who is also in possession under his legal title, and some outstanding junior interest has not,

by reason of pure inadvertence, not aggravated by bad faith, been barred by the decree. Such is the established practice in this State. [at 409]

There having been no foreclosure judgment, no mortgagee in possession, and no joinder of the legal and equitable estates in either the Borks or FNMA, strict foreclosure was held to be inappropriate and accordingly was denied. This appeal followed.

The text immediately following that quoted by the trial judge from *Sears, Roebuck* reads:

And it has been held, although it is not necessary to a decision of this case, that it may also be invoked where the mortgage has been given for the entire purchase price, and the value of the land does not exceed the amount of the mortgage. * * * [at 409–410]

The settlement sheet at the time when the Borks took title on March 2, 1966 shows that the $12,500 FHA purchase money mortgage which the Borks executed on that date and which was later assigned to FNMA, reflected the full purchase price. It is represented that at the time the Borks took title the property was in a run-down condition, and they agreed to the purchase price because they had need of a dwelling in that price range. The last-quoted language from *Sears, Roebuck* therefore fits the Borks' situation.

As Justice Heher said in that case, "strict foreclosure is still an appropriate remedy where, in the special circumstances, it will subserve equity and justice" [at 409]. He also referred to the flexibility of equitable remedies, "their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use" [at 411]. And he appropriately noted,

A lack of precedent, or mere novelty in incident, is no obstacle to the award of equitable relief, if the case presented is referable to an established head of equity jurisprudence — either of primary right or of remedy merely. *Vanderbilt v. Mitchell*, 72 *N. J. Eq.* 910, 14 L. R. A., N. S., 304; *Van Duyne v Vreeland*, 12 *N. J. Eq.* 142. And it is an ancient field of equity jurisprudence to relieve against the

consequences of accident and mistake of fact — not to mention its jurisdiction over equitable titles and interests created by mortgage — where, in the furtherance of justice, that course may be taken without disregard of an equal or superior equity, particularly where one has thereby acquired, at the expense of the complaining party, a legal right which in good conscience he should not retain. * * *

In our view, the circumstances of the present case point to a special equity which calls for strict foreclosure. Vito Capabianco's judgment was against a George Fink. When George W. Fink and his wife conveyed the premises in July 1963 to the Whale Agency subject to the mortgage they had given in 1961, George W. Fink signed an affidavit that the Capabianco judgment was not against him but against another of similar name. The Whale Agency conveyed to Vito Doria and his wife, subject to the first mortgage, and by contract of November 18, 1965 they agreed to sell the property to the Borks for $12,500. On January 14, 1966 First Federal Savings & Loan Ass'n of Clearwater, Florida, brought suit to foreclose the 1961 mortgage, joining a Vito *Capabian* as defendant, and filed a *lis pendens* one week later. As noted, the Bork title and the FHA purchase money mortgage were closed March 2, 1966. At the closing reliance was placed on the mentioned Fink affidavit. Incidentally, the *lis pendens* filed by First Federal gave no indication that Vito Capabianco had a judgment lien. It was only when the closing attorney, following the Bork closing, sought dismissal of First Federal's foreclosure action that he for the first time learned of the Capabianco judgment. It subsequently developed that the affidavit executed by George W. Fink, and which was relied upon at the Whale Agency, Doria and Bork closings, was not true.

Capabianco would not consent to the dismissal of First Federal's foreclosure action unless he was paid what was due on his judgment. He has maintained that position; we are informed by counsel that he refused to settle his claim for $700.

At the time of the closing of the Bork title and the F H A mortgage, the closing attorney could have insisted that be-

fore the deal went through, First Federal would have to continue with its foreclosure action to judgment and sale. Unless Capabianco redeemed the property by paying the 1961 mortgage, his judgment lien would have been terminated. He stands in no better or worse position if strict foreclosure is granted in this case.

It is only because of the closing attorney's reliance upon the Fink affidavit that Capabianco has been able to insist upon payment of his judgment. He thus places an obstruction in the way of a sale of the Bork property — an obstruction which can be overcome only by a purchaser being willing to pay a price high enough to get rid of the judgment and let the Borks out whole. Although Capabianco has executed against Mr. Fink's interest in the property, he can gain little thereby unless Mrs. Fink dies first, title being held by the entirety. That event may lie many years in the future.

There was some suggestion in the course of the argument below that a possible and practical procedure would be to create a situation resulting in a default under the FNMA mortgage, in which case FNMA could proceed to foreclosure and "get rid" of Capabianco. We agree with Bork counsel's rejoinder: "I don't see why a court of equity would require us to do that." A contrived default is a device which equity should abhor.

In the special circumstances of this case, strict foreclosure is an appropriate remedy subserving both equity and justice. Accordingly, we reverse and remand the matter to the trial court for entry of an amended judgment granting subrogation and strict foreclosure.

LEWIS, J. A. D. (dissenting). With deference to the views expressed in the majority opinion, I vote for affirmance substantially for the reasons set forth in the reported opinion of Judge Lane for the Chancery Division at 106 *N. J. Super.* 429 (Ch. Div. 1969). See also *Patsourakos v. Kolioutos,* 132 *N. J. Eq.* 87, 95 (Ch. 1942), aff'd o. b. 133

*N. J. Eq.* 37 (E. & A. 1943); *Osborne, Mortgages,* § 312, p. 905 (1951); 37 *Am. Jur., Mortgages,* § 530, at 32 (1941); *cf.* 1 *Kocher & Trier, New Jersey Chancery Practice and Precedents,* § 984, at 646 (1924).

Although the $12,500 mortgage was for the full purchase price, that transaction was nearly 4½ years after the judgment of $1176.03 in favor of Capabianco, against a former owner of the premises, was recorded. The proceedings to foreclose the prior mortgage of $10,600 were never pursued to a judicial sale. The mortgagee was never in possession nor were the legal and equitable estates ever united. In my view the trial court properly distinguished *Sears, Roebuck & Co. v. Camp,* 124 *N. J. Eq.* 403, 118 A. L. R. 762 (E. & A. 1938).

I fail to perceive any overriding equity in favor of defendants Bork or the American Title Insurance Company, the real party in interest, who chose to rely upon the false affidavit of Geoge Fink instead of the public records which would have revealed the Capabianco judgment.

It is significant that Capabianco filed an answer as a junior lienor in the foreclosure action, and he protested a dismissal thereof unless his judgment was satisfied. Had a foreclosure sale taken place, it is reasonable to assume, since the property was privately sold and financed for $12,500, that the bidding would have produced a surplus in excess of the $10,473.45 then due on the mortgage. Ordinarily a junior-lienor defendant in an action to foreclose a mortgage against multiencumbered premises should have the right to demand a foreclosure sale. See Tischler, "Strict Foreclosure in New Jersey," 64 *N. J. L. J.* 141, 146 (1941).

In the instant circumstances, the "harsh remedy" of strict foreclosure should not be invoked against a diligent judgment creditor. I would therefore affirm.