959 A.2d 1239 (2008)
403 N.J. Super. 630
U.S. BANK NATIONAL ASSOCIATION as Trustee Residential Funding Company, LLC, Plaintiffs,
v.
Donovan A. HYLTON and Mrs. Donovan Hylton, Juliet M. Hylton and Mr. Hylton, United States Of America and American General Financial Services, Inc., Defendants.
No. F-14030-07
Superior Court of New Jersey, Chancery Division (Civil), Mercer County.
Decided June 13, 2008.
*1240 Dennis M. Gonski, Carle Place, NY, for plaintiffs (Dollinger, Gonski & Grossman, attorneys).
Christine Pinto, Marlton, for defendants (Parker, McCay, attorneys).
MARIA M. SYPEK, P.J. Ch.
This matter arises from a foreclosure complaint filed on June 6, 2007 by U.S. Bank National Association as Trustee Residential Funding Company, LLC ("plaintiff") against Donovan A. Hylton ("Donovan") and his wife Mrs. Donovan Hylton, Juliet M. Hylton ("Juliet") and her husband Mr. Hylton, the United States of America, and American General Financial *1241 Services, Inc. ("AGFS"). On August 15, 2007, default was entered against defendants. The default against AGFS was subsequently vacated and AGFS thereafter filed a contesting answer on March 24, 2008. By way of the present motion, plaintiff seeks to establish that it has a first lien priority on the property located at 12 Hillsdale Road, Lawrenceville, New Jersey (the "property").
The facts reveal that fee title to the property is currently held by two deeds. The first deed is a bargain and sale deed from William and Barbara Rhodes to Donovan dated September 29, 1996, for the consideration of $155,000, and the second deed is a quitclaim deed from Donovan to Donovan and Juliet dated March 24, 2006, for the consideration of $1. On December 24, 2005, Donovan executed a mortgage with Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. ("Countrywide") for the amount of $300,001 (the "Countrywide mortgage"). In an effort to refinance the Countrywide mortgage, Donovan and Juliet executed two more mortgages. The first mortgage was a "home equity" mortgage to AGFS dated May 16, 2006, in the amount of $35,000 (the "AGFS mortgage"). The AGFS mortgage was subsequently recorded on May 18, 2006. The second mortgage was a "conventional" mortgage to Mortgage Lenders Network, USA, Inc., ("Mortgage Lenders") dated June 13, 2006, in the amount of $408,000. This mortgage was subsequently recorded on June 29, 2006, and thereafter assigned to plaintiff on July 12, 2007 (the "Plaintiff mortgage").
Plaintiff claims that Donovan applied for the loan made to Mortgage Lenders on June 8, 2006. However, despite the fact that Donovan and Juliet had previously executed the AGFS Mortgage, plaintiff alleges that his loan application only revealed Countrywide as the holder of an "open" prior lien. Furthermore, plaintiff states that in connection with the loan application, a customary title search was obtained from Ideal Title Agency, LLC ("Ideal"). The Ideal title search was conducted on May 22, 2006, but showed a board date of May 10, 2006.[1] Therefore, plaintiff asserts that Ideal's title search could not have discovered the AGFS Mortgage dated May 16, 2008.
On June 13, 2006, plaintiff states that the refinance loan made by Mortgage Lenders closed, and the loan closing instructions provided by Mortgage Lenders instructed the title agent to obtain a first lien. Thus, Ideal then executed a "rundown" search conducted by telephone, which plaintiff claims did not discover the AGFS mortgage. Plaintiff also asserts that at the closing, Donovan submitted an affidavit of title which provided that as of June 13, 2006, he had given no other mortgages.
On June 15, 2006, in connection with the Mortgage Lenders loan, Ideal paid Countrywide the amount of $303,193.93 which represented the payoff figure of the Countrywide mortgage. On June 19, 2006, Ideal wire transferred the remaining loan proceeds in the amount of $90,888.80 to Donovan's bank account. Ideal also requested a cancellation of the Countrywide mortgage.
Plaintiff finally claims that the AGFS mortgage was not discovered until the title company's "cover record" search was conducted on April 6, 2007. Plaintiff states that at this point it was too late to do *1242 anything to protect either itself or AGFS. The mortgage given to Money Lenders was assigned to plaintiff and recorded on August 30, 2007. It was not until later that the mortgage held by AGFS was uncovered.
Plaintiff now moves for summary judgment on the issue of the priorities of the plaintiff mortgage and the AGFS mortgage. According to plaintiff, because of the modest amount of the AGFS mortgage, AGFS was never in a position to pay off Countrywide. Plaintiff also states that AGFS never could have had a reasonable expectation of obtaining a first lien due to the fact that more than $300,000 was owed to Countrywide. Plaintiff claims that AGFS will not be prejudiced by a decision ordering that the AGFS mortgage is subordinate to the plaintiff mortgage because plaintiff merely seeks to stand in the shoes of Countrywide as if Countrywide assigned its mortgage to plaintiff.
Plaintiff also contends that had it known of the existence of the AGFS mortgage on the date of closing of the loan, it never would have allowed the $90,888.80 pay out to Donovan without first satisfying all known prior liens. Plaintiff argues that it was clearly not aware of the AGFS mortgage because it was not disclosed either by Donovan or by the title search. Thus, plaintiff contends that the doctrine of equitable subrogation applies here and thereby plaintiff is entitled to stand in the shoes of the Countrywide Mortgage, which it paid off. Therefore, plaintiff maintains that summary judgment is appropriate here establishing that the plaintiff mortgage is a first priority lien on the property. Specifically, plaintiff maintains that it should stand in Countrywide's shoes only to the extent of $303,103.93. Thus to that amount, plaintiff asserts that it is entitled to the first lien position. The balance of their loan of $104,806.07 would hold the third position.
In response, AGFS argues that plaintiff acted negligently in failing to discover the existence of its mortgage by failing to comply with reasonable industry practices. AGFS notes that the loan closing instructions provided by the lender were dated June 13, 2006, nearly a month after AGFS executed its mortgage and recorded it. Thus, AGFS claims that a review of the public record at that time would have revealed the existence of the AGFS mortgage. Furthermore, AGFS states that the loan closing instructions provided that the loan must fund by June 30, 2006, giving the title company until that date to properly examine the title of the property.
As to the "rundown" search conducted telephonically, AGFS contends that a party should not rely on a telephonic search and asserts that a legitimate "rundown" search would have disclosed the AGFS mortgage. AGFS notes again that a title search conducted on June 13, 2006, nearly a month after the AGFS mortgage was recorded, would have revealed its existence. Furthermore, AGFS argues that when the "cover search" of April 2007 finally discovered the AGFS mortgage, it was not too late to protect the lenders. Rather, AGFS states that the title company can and should pay off the AGFS mortgage. In sum, because the AGFS mortgage predates and was recorded prior to the plaintiff mortgage and because the title company was negligent in failing to discover the AGFS mortgage, AGFS contends that summary judgment must be denied here.
The issue before the court is whether it should grant plaintiff's motion for summary judgment against AGFS. Under Rule 4:46-2, summary judgment is only appropriate where the pleadings, affidavits, and other matters of record show that there is no genuine issue as to material fact and the moving party is entitled to *1243 judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995). If the moving party makes the requisite prima facie showing, it is incumbent upon the opposing party to come forward with competent proofs indicating that the facts are not as the moving party asserts. Spiotta v. William H. Wilson, Inc., 72 N.J.Super. 572, 581, 179 A.2d 49 (App.Div.), certif. denied, 37 N.J. 229, 181 A.2d 12 (1962). The court is then obligated "to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the moving party." Brill, supra, 142 N.J. at 540, 666 A.2d 146.
In this matter, plaintiff argues that the doctrine of equitable distribution is applicable. Plaintiff claims that this doctrine permits a lender who innocently satisfies a prior creditor to step into the shoes of that prior creditor with respect to its rights and securities. Plaintiff asserts that justice and fairness demand its application here for a number of reasons. Plaintiff states that it intended on receiving a first priority lien here and AGFS expected to receive a subordinate lien on the property. Plaintiff claims that it lacked knowledge of the fact that the AGFS mortgage predated and was recorded prior to its mortgage because of mistakes that may have been made by the title company and due to Donovan's false affidavit and loan application. Finally, plaintiff asserts that the application of the doctrine of equitable distribution is appropriate because AGFS would be unjustly enriched if it was given a first priority lien. Therefore, plaintiff argues that this doctrine must be applied and that its mortgage be deemed a first priority lien.
In response, defendant contends that it did not expect to receive a subordinate lien, but rather, a lien that would gain priority as the prior liens were satisfied, here, the Countrywide mortgage. Defendant claims that plaintiff had knowledge of the AGFS mortgage and that plaintiff should not be rewarded for acting negligently in determining whether other liens existed on the property. Furthermore, AGFS maintains that it has not been unjustly enriched because its current position is simply the result of the natural course of lien priorities. Therefore, defendant argues that summary judgment must be denied as genuine issues of material fact are present here.
The doctrine of equitable subrogation is "highly favored in the law." Montefusco Excavating & Contracting Co. v. Middlesex County, 82 N.J. 519, 523, 414 A.2d 961 (1980). The doctrine, with its "equity underpinnings," is used "to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it." First Union Nat'l Bank v. Nelkin, 354 N.J.Super. 557, 565, 808 A.2d 856 (App.Div.2002) (quoting Culver v. Ins. Co. of N. Am., 115 N.J. 451, 455-56, 559 A.2d 400 (1989)). Subrogation rights are created in three different ways: (1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel such a discharge. Ibid. (citing Culver, supra, 115 N.J. at 456, 559 A.2d 400). Generally, a new mortgagee is subrogated to the priority rights of an old mortgagee by either agreement or assignment. Ibid. In the absence of such an agreement or assignment, a mortgagee who accepts a mortgage whose proceeds are used to pay off an older mortgage is equitably subrogated to the extent of the loan so long as the new mortgagee lacks knowledge of the other encumbrances. Ibid. (citing Metrobank for Sav., FSB v. Nat'l Cmty. Bank, 262 N.J.Super. 133, 143-44, 620 A.2d 433 (App. Div.1993)). In that situation, the new *1244 mortgagee, by virtue of its subrogated status, can enjoy the priority afforded the old mortgagee. Ibid. Equitable subrogation may still be afforded even though lack of knowledge on the part of the new mortgagee occurs as a result of negligence. Ibid. (citing Kaplan v. Walker, 164 N.J.Super. 130, 138, 395 A.2d 897 (App.Div.1978)). On the other hand, the new lender is not entitled to subrogation, absent an agreement or formal assignment, if it possesses actual knowledge of the prior encumbrance. Id. at 565-66, 808 A.2d 856 (citing Metrobank, supra, 262 N.J.Super. at 143-44, 620 A.2d 433).
In addition to finding that the new mortgagee lacked knowledge of the preexisting encumbrance, application of the doctrine requires the court to find either (1) the old mortgagee was unjustly enriched; or (2) the old mortgagee acted fraudulently. Id. at 566, 808 A.2d 856 (citing Metrobank, supra, 262 N.J.Super. at 144, 620 A.2d 433). Simply, as the doctrine of equitable subrogation is an equitable doctrine, "subrogation is applied only in the exercise of the court's equitable discretion." Ibid. (quoting Metrobank, supra, 262 N.J.Super. at 144, 620 A.2d 433).
In this matter, it is clear that no subrogation rights were created by way of an agreement or assignment between Countrywide and plaintiff. Therefore, plaintiff is only entitled to the application of equitable subrogation through the decision by the court.
The court first addresses whether plaintiff had knowledge of the AGFS mortgage when it executed its mortgage with Donovan and Juliet. Here, plaintiff contends that it was unaware of the AGFS mortgage because the Ideal title search with a board date of May 10, 2006, could not have revealed the existence of the AGFS mortgage, the Ideal "rundown" search did not reveal its existence, and because Donovan affirmed in an affidavit of title that he had given no other mortgages. AGFS responds by arguing that any legitimate title search conducted after May 18, 2006, the date it recorded its mortgage, certainly would have discovered the AGFS mortgage.
Here, the court finds that no issues of material fact exist as to whether plaintiff had actual knowledge of the AGFS mortgage. Plaintiff has provided documentary evidence demonstrating that the searches that were conducted did not reveal the existence of the AGFS mortgage nor did the affidavit of title signed by Donovan disclose its existence. Thus, plaintiff has made its prima facie showing that it was unaware of the AGFS mortgage at the time it executed its mortgage and paid off the Countrywide mortgage. On the other hand, AGFS's only response to plaintiffs allegation that it lacked knowledge of the AGFS mortgage is that it "is self serving and meritless." AGFS here has failed to allege or provide proof of actual knowledge by plaintiff of the AGFS mortgage. The court further notes that AGFS is not saying that it could do so with further discovery.
AGFS cites to the New Jersey Recording Act, N.J.S.A. § 46:16-1, in support of its argument that plaintiff's claims here are barred. N.J.S.A. 46:21-1 provides:
Except as otherwise provided herein or in chapter 9 of Title 12A of the New Jersey Statutes, whenever any deed or instrument of the nature or description set forth in section 46:16-1 of this Title, which shall have been or shall be duly acknowledged or proved and certified, shall have been or shall be duly recorded or lodged for record with the county recording officer of the county in which the real estate or other property affected thereby is situate or located such record shall, from that time, be notice to all subsequent judgment creditors, purchasers *1245 and mortgagees of the execution of the deed or instrument so recorded and of the contents thereof.
However, our courts have determined that constructive notice of a prior mortgage does not amount to "actual knowledge" as required under the doctrine of equitable subrogation. In First Fidelity Bank, National Association South v. Travelers Mortgage Services., 300 N.J.Super. 559, 693 A.2d 525 (App.Div.1997), the court stated that the law in this area is clear:
Although some courts have denied subrogation when the lender's ignorance of junior encumbrances is due to his own negligence, the better view, followed in New Jersey, is that negligence is not a bar to subrogation unless subsequent intervening rights are involved. Some courts have also held that constructive notice of junior encumbrances through recordation will bar the lender's right to subrogation, but the better view is to the contrary. Constructive notice has no bearing on the lender's expectation that he will acquire security with the same rank as the old mortgage, and the argument based on recordation is really just another form of the argument based on negligence. It is clear that subrogation will not be denied in New Jersey because of the recordation of junior encumbrances which would otherwise move up to a higher priority.
[Id. at 565, 693 A.2d 525 (citing 29 New Jersey Practice, Law of Mortgages § 147 at 674-76 (Roger A. Cunningham & Saul Tischler) (1975)).]
Thus, the fact that plaintiff was on constructive notice of the AGFS mortgage does not bar the court from invoking the doctrine of equitable subrogation.
Additionally, however, in satisfying the requirement of lack of actual knowledge, the court must also determine if it can be invoked here where the lack of actual knowledge was due to mistake and/or fraud. In Camden County Welfare Bd. v. Federal Deposit Insurance, 1 N.J.Super. 532, 62 A.2d 416 (Ch.Div.1948), the court provided guidance as to when mistake would be a valid ground for claiming a lack of knowledge of a prior lien:
`But what degree of vigilance is to be exercised must depend upon the facts of each case. Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected although the highest degree of vigilance has not been exercised.'

Id. at 550, 62 A.2d 416 (quoting Inst. Bldg. & Loan Ass'n v. Edwards, 81 N.J. Eq. 359, 365, 86 A. 962 (Ch.1913)).
The Camden court found that it could invoke the doctrine of equitable subrogation where the plaintiff exercised reasonable diligence prior to paying off the mortgage, and where there were no innocent third parties whose interest attached to the property subsequent to the cancellation of the mortgage who could thereby be detrimentally affected if the plaintiff subrogated to the rights of the original mortgagee. Id. at 551, 62 A.2d 416.
In Home Owners' Loan Corp. v. Collins, 120 N.J. Eq. 266, 269, 184 A. 621 (Ch. 1936), the court found that the complainant was entitled to subrogation despite the fact that both the application for the loan and the title search revealed another mortgage. The court found that there was some carelessness on the part of some *1246 employee of the complainant, and also found mistake or fraud on the part of the borrowers because they submitted an affidavit which did not provide for the existence of the mortgage. Ibid. The court noted, however, that certain surrounding circumstances should be considered in analyzing its finding of negligence, including the fact that the complainant was a corporation that was asked to act in a national emergency. Ibid.
Finally, in Capabianco v. Bork, 106 N.J.Super. 429, 434, 256 A.2d 76 (Ch.Div. 1969), rev'd on other grounds, 108 N.J.Super. 356, 261 A.2d 393 (App.Div.1970), the court ordered that subrogation occur partly because the borrowers had signed a false affidavit. The court also reiterated the standard whereby a mistake committed could lead to subrogation as enunciated in Camden, supra, 1 N.J.Super. 532, 62 A.2d 416, and additionally stated that it has been repeatedly held that negligence arising out of the failure of a party to procure proper searches should be considered with reference to the effect on the rights of others.
In this matter, the court finds that equitable subrogation may still be afforded based on the negligence here. Although certainly plaintiff here has not exercised the highest degree of vigilance, it undisputedly made attempts to determine if any other liens existed on the property. The only party who has become injured by plaintiff's mistake is plaintiff and there were no innocent third parties whose interest attached to the property subsequent to the cancellation of the Countrywide mortgage. Although the emergent circumstances in Collins, supra, 120 N.J. Eq. 266, 184 A. 621, are not present here, the present matter also does not involve a situation where the complainant possessed a loan application and title search revealing the existence of another mortgage. Finally, although it can be argued that plaintiff failed to procure a proper title search on the date of closing of the loan or shortly thereafter, no innocent third parties exist here whose rights may have been harmed by plaintiffs failure to do so. Therefore, the court finds that plaintiff lacked knowledge of the AGFS mortgage thereby satisfying the first requirement of the equitable subrogation doctrine.
The court next addresses whether AGFS was unjustly enriched or whether AGFS has acted fraudulently in this matter. As there are no allegations of fraud exercised against AGFS, the court must find that AGFS was unjustly enriched in order to apply equitable subrogation.
The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. Assocs. Commercial Corp. v. Wallia, 211 N.J.Super. 231, 243, 511 A.2d 709 (App.Div.1986). "To recover under this doctrine, the plaintiff must prove that the defendant `received a benefit, and that retention of the benefit without payment therefor[e] would be unjust.'" Ibid. (quoting Callano v. Oakwood Park Homes Corp., 91 N.J.Super. 105, 109, 219 A.2d 332 (App.Div.1966)). A common thread running throughout successful invocation of the doctrine of unjust enrichment is "that the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Id. at 244, 511 A.2d 709 (quoting Callano, supra, 91 N.J.Super. at 109, 219 A.2d 332).
In this matter, the court finds that AGFS has been unjustly enriched through the conduct of plaintiff. AGFS has received the benefit of holding a first priority lien after plaintiff paid off the Countrywide mortgage. AGFS made no payment to obtain this benefit, and its retention of this benefit would be unjust because although *1247 plaintiff may have been somewhat negligent in attempting to discover whether other liens existed on the property, it did conduct title searches and was misled by the affidavit of title filed by Donovan. Furthermore, had plaintiff known of the existence of the AGFS mortgage at the time of execution of its mortgage, it certainly would have expected some type of remuneration to allow the AGFS mortgage first priority as to the property. Therefore, the court finds that AGFS has been unjustly enriched here.
The court thereby finds that it shall apply the doctrine of equitable subrogation and allow plaintiff to step into the shoes of Countrywide so that the plaintiff mortgage constitutes a first priority lien on the property to the extent of the Countrywide mortgage amount of $303,103.93. The court finds that plaintiff has satisfied its burden in demonstrating that it lacked actual knowledge (even through negligence) of the AGFS mortgage and that AGFS was unjustly enriched by its actions. Therefore, the Court will award summary judgment to plaintiff on this issue.
For the above stated reasons, plaintiff's motion for summary judgment is granted and an order is entered this date.
NOTES
[1] According to plaintiff, the "board date" is the date to which the records of the clerk's or register's office have been posted. The Ideal title search thus had a "gap" of twelve days, and according to Plaintiff, the title search would not discover any liens recorded in this "gap" period.