MONTEFUSCO EXCAVATING & CONTRACTING CO., INC., PLAINTIFF-RESPONDENT, v. COUNTY OF MIDDLESEX, DEFENDANT.

APPEAL OF UNITED STATES FIDELITY AND GUARANTY COMPANY.

Argued January 22, 1980—Decided May 14, 1980.

520

*Richard R. Width* argued the cause for appellant (*Lindabury, McCormick and Estabrook,* attorneys; *Richard R. Width* and *John H. Schmidt, Jr.,* on the brief).

*Robert B. Silverman* argued the cause for respondent (*Braun and Braun,* attorneys; *Bartholomew G. Babiak,* on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

On or about December 18, 1975, plaintiff, Montefusco Excavating & Contracting Co., Inc. (Montefusco), entered into a contract with defendant County of Middlesex to construct part of a water and sewer system in the Raritan Arsenal County Park in Edison, N. J. The contract price was $147,451. During the performance of the work, the contractor asserted that the County owed it additional monies for extra work arising out of unusual subsurface conditions. A dispute arose and apparently Montefusco stopped the job when these funds were not paid.

Montefusco instituted this action seeking recovery of the sums allegedly due because of the extras. The County counterclaimed, asserting that its expenditures to complete the contract resulted in costs beyond the contract price. The litigation was settled. The County agreed to pay $9500 in settlement of all claims against it and to dismiss its counterclaim.

At Montefusco's behest U. S. Fidelity & Guaranty Co. (USF&G) had executed as surety a statutory form construction bond, N.J.S.A. 2A:44–147, relating to the construction contract under which Montefusco was principal and the County was obligee. USF&G paid $101,456 to ten creditors—laborers and materialmen—of Montefusco upon its failure to do so. The settlement check was payable to Montefusco, its attorneys, and USF&G. When USF&G refused to endorse and deliver the check to Montefusco's attorneys, Montefusco obtained an order to show cause why a new check should not be issued eliminating USF&G as a payee. USF&G then filed a motion for an order directing that a check be made payable only to it or, in the alternative, requiring the other payees to endorse the existing check.

After being advised that USF&G had paid Montefusco's creditors, the trial court granted USF&G's motion to compel the other payees to endorse the check. The Appellate Division reversed and remanded the matter to the trial court, 169 N.J.Super. 109, 40 A.2d 337 (1979), because USF&G's claim was subject

to the claim of Montefusco's attorneys for legal fees. It held that USF&G's claim was premised on its right to reimbursement from Montefusco and that, as such, it was a right of subrogation which carried with it the requirement that the subrogee (USF&G) pay its *pro rata* share of counsel fees. Stating that the fund was impressed with a trust under *N.J.S.A.* 2A:44–148 [1] in favor *only* of materialmen and laborers, the Appellate Division concluded that USF&G as surety was not entitled to the benefit of the statute. We granted USF&G's petition for certification. 81 *N.J.* 352, 407 *A.2d* 1226 (1979).

The basic questions which must be resolved are: (1) What are the subrogation rights of the surety USF&G? (2) What does the $9500 check represent? (3) What is USF&G's obligation, if any, with respect to the counsel fee owing in connection with the litigation which resulted in the $9500 settlement?

Subrogation is an equitable remedy by which a surety, upon performance, is placed in the position of the creditor with respect to that creditor's rights and available securities. See *Ambassador Ins. Co. v. Montes,* 76 *N.J.* 477, 484 (1978). Thus, in the case of a surety on a bond guaranteeing payment of laborers and materialmen, the surety's payment of indebtedness to a laborer or materialman would entitle the surety to stand in his shoes and to pursue all the rights which had been available to that laborer or materialman.[2] See *Stevlee Factors, Inc. v. State,* 136 *N.J.Super.* 461, 466 (Ch.Div.1975), aff'd o. b. 144 *N.J.Super.* 346 (App.Div.1976).

---

[1] The Trust Fund Act, *N.J.S.A.* 2A:44–148, appears in the annotated statutes as *N.J.S.A.* 2A:44–147. It is cited as *N.J.S.A.* 2A:44–148, however, because of the prior publication of an *N.J.S.A.* 2A:44–147 concerning the form and condition of surety bonds.

[2] A surety may also have an equitable right to be indemnified by the contractor for the loss sustained by the surety in making payment of the debt. *Restatement of Security* § 104; *Stearns, Law of Suretyship* 505 (5th ed. 1951).

The general rule has been stated by Stearns in the *Law of Suretyship* (5th ed. 1951), as follows:

> The scope of the right of subrogation consists in the immediate transfer, by operation of law, to the promisor in suretyship of all the rights of the creditor against the principal whenever the promisor pays the debt or satisfies the obligation. [*Id.* at 439]

Unlike bonding requirements provided for in private construction transactions, the Legislature has seen fit to establish certain standards and protection for workers and suppliers on public construction projects. When public improvements are to be constructed under contract at the expense of the State or any county, the public bond act requires that the contractor furnish "the usual bond, as provided for by law, with good and sufficient sureties" obligating payment for all labor performed or materials used in the construction. *N.J.S.A.* 2A:44–143. The bond must provide for payments equal to at least 100 per cent of the contract price. *N.J.S.A.* 2A:44–144. Any person to whom any money is due on account of having performed any labor or furnished any materials must at any time furnish the surety on the bond a statement of the amount due, either before the work has been accepted, or within 80 days thereafter. *N.J.S.A.* 2A:44–145. If the indebtedness is not paid at the expiration of 80 days after acceptance of the work, the laborer or materialman may bring an action on the bond. *N.J.S.A.* 2A:44–146.

The statute provides that the form of the bond must accord substantially with the statutory language. *N.J.S.A.* 2A:44–147. That language may be summarized as follows: The contractor and surety bind themselves to the obligee in a dollar amount which is at least equal to the contract price (*N.J.S.A.* 2A:44–144); the contract is incorporated by reference; it is stipulated that if the contractor pays all materialmen and laborers the amounts due, then the obligation of the bond is ended. The bond must also state that the "undertaking shall be for the

benefit of any subcontractor, materialman, laborer, person, firm or corporation having a just claim" as well as for the benefit of the principal.

■ Moreover, the Legislature has provided that monies paid by the State or by any county to any person pursuant to the provisions of a contract for any public improvement made between such person and the State or county "shall constitute a trust fund in the hands of such person as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid." *N.J.S.A.* 2A:44–148. This act, commonly known as the Trust Fund Act, protects those who have claims for labor, material and other charges incurred in fulfilling the contract between the governmental body and its contractor. Thus, money paid by the government to a public contractor constitutes a trust fund for its laborers and materialmen. When a contractor's surety has paid the contractor's indebtedness to the laborer or materialman, the surety may pursue the remedies of the laborer or materialman by proceeding against the funds paid to the contractor. See *Graybar Elec. Co. v. Manufacturers Casualty Co.*, 37 *N.J.Super.* 284, aff'd 21 *N.J.* 517 (1957) (dictum).

The contention is made that the benefits of the Trust Fund Act are restricted to laborers and materialmen and are not available to a surety. Nothing in the legislative history of the Trust Fund Act indicates that this fund should not be considered an asset or credit subject to the equitable subrogation rights of a surety. We reviewed in *Key Agency v. Continental Casualty Co.*, 31 *N.J.* 98, 107–108 (1959), the circumstances which led to the adoption of the statute. There we noted that the impetus for the act was the decision in *Grover v. Board of Ed. of Franklin Tp.*, 102 *N.J.Eq.* 415 (Ch.1928), aff'd 104 *N.J.Eq.* 197 (E. & A. 1929). In *Grover* a contractor had paid a materialman a sum more than sufficient to satisfy the materialman's claim. However, the materialman chose to apply the payment to a prior debt owed to him by the contractor, and filed a lien claim on the

money in the hands of the school board. Although the surety asserted the claim had been satisfied, the Court held otherwise and allowed the materialman's lien. This decision made it clear that to protect the payment bond surety, some method was required to assure that money paid to public contractors be used to reduce debts for labor and materials guaranteed by the payment bond. See also *Stulz-Sickles co. v. Fredburn Constr. Corp.*, 114 *N.J.Eq.* 475, 479 (Ch.1933) ("While the [Trust Fund Act] . . . designates claimants for 'labor, materials and *other charges* incurred in connection with the performance of a contract' as the beneficiaries of the trust thereby created, and surety companies are not specifically named, it requires no keen discernment to see behind this remedial . . . legislation, the subtle hand of those corporations most likely to be affected by the *Grover* decision.")

Since laborers and materialmen had the protection of a surety bond, *N.J.S.A.* 2A:44–143, they would appear to have little, if any, need for additional security. The same could not be said for the surety. Applying the rule of construction that statutes are to be interpreted in light of the occasion, the mischief perceived and the remedy in view when enacted, we concluded in *Key Agency* that "[i]t appears that the Trust Fund Act was intended primarily to benefit the surety." 31 *N.J.* at 108. We continue to adhere to that view.

█ Montefusco's counsel also contends that, since the Trust Fund Act only applies to "money paid" by the County and the funds represented by the $9500 settlement check had not been paid, the monies therefore could not be monies impressed with a trust on behalf of laborers and materialmen. The short answer to this contention is that though the check had not been cashed, from the County's viewpoint the funds were considered paid. The parties had entered into a settlement agreement, all settlement pieces had presumably been exchanged and the County's

check had been delivered. For the purposes of *N.J.S.A.* 2A:44–148, the funds had been paid.

Montefusco's counsel also argues that the settlement sum is subject to an attorney's charging lien under *N.J.S.A.* 2A:13–5. That statute grants an attorney a lien for compensation upon his client's cause of action, which lien is not affected by a settlement. However, the attorney's lien can only become affixed to his client's interest in the fund. *Hobson Constr. Co. v. Max Drill, Inc.*, 158 *N.J.Super.* 263, 268 (App.Div.1978); *Camden Cty. Park Comm'n v. Bigler*, 124 *N.J.Eq.* 378, 390 (Ch.1938), modified 127 *N.J.Eq.* 4 (E. & A.1940); *Columbia Ins. Co. v. Artale*, 112 *N.J.Eq.* 505, 508–509 (Ch.1933), aff'd on other ground 114 *N.J.Eq.* 268 (E. & A.1933). If the funds in question represent monies to be applied to claims for labor, materials and other charges incurred in connection with the performance of the contract, as they seem to be, then those funds would constitute a trust fund. *N.J.S.A.* 2A:44–148. The attorneys' charging lien would therefore not exist since the fund would not belong to Montefusco, but to its materialmen and laborers or their subrogee.

Though the monies paid by the County may fall within the category of a trust fund and not be subject to the attorneys' charging lien, the attorneys who made that fund available for the subrogee of the fund's beneficiary may still be entitled to a counsel fee for services rendered. Subrogation is not an absolute right but is to be applied with due regard to the legal and equitable rights of others. See *Gaskill v. Wales*, 36 *N.J.Eq.* 527, 533 (E. & A.1883). Accordingly, a surety, when exercising its subrogation right, may be required to pay its *pro rata* share of counsel fees incurred by the subrogor in establishing the judgment which enures to the surety's benefit. See *Hedgebeth v. Medford*, 74 *N.J.* 360, 369 (1977); *Klacik v. Kovacs*, 111 *N.J.Super.* 307 (App.Div.1970), certif. den. 57 *N.J.* 237 (1970). When the principal incurs counsel fees to collect funds belonging to the subrogor which enure to the surety's benefit in the same manner

as if the subrogor had himself incurred those counsel fees, the same rule should apply. This would be particularly so when the surety acquiesces in the legal proceedings instituted and carried on to fruition by the attorney.

This appears to be the situation in this case. Counsel for the surety stated on oral argument that USF&G had agreed to pay the expenses of Montefusco's proposed expert witness. The surety had been aware of the litigation and had not objected to it, and had been kept advised of negotiations which led to the settlement in the courthouse immediately before trial. The inclusion of USF&G as a payee on the settlement check indicates that all parties knew of its interest.

A complicating factor arises out of the counterclaim which Montefusco's attorneys were defending and which may have been an element leading to the $9500 figure. At oral argument, Montefusco's counsel admitted that defense of the counterclaim did not benefit its laborers and materialmen. There would appear to be no justification to charge the surety with any part of the cost of the legal services rendered in defense of the counterclaim.

Another unknown factor relates to the precise basis for Montefusco's suit. Although it is not clear, it seems that when the action was instituted USF&G had not paid any of Montefusco's suppliers or laborers. USF&G filed two affidavits with the trial court in connection with its motion. Initially the motion was made in June 1977 and renewed in August 1978. Attached to the original motion was an affidavit reciting that USF&G had paid four creditors a total of $53,718. The affidavit accompanying the renewal motion stated that ten creditors had been paid $101,456. No right of subrogation exists, of course, until the claim has been paid. *Union Stone Co. v. Hudson Cty. Freeholder Bd.*, 71 *N.J.Eq.* 657, 670 (Ch.1906). Whether the work and materials Montefusco was seeking in the lawsuit were included in the labor and supplies which had been paid for by USF&G is unknown. These facts are relevant in ascertaining

what interest the surety as subrogee of the materialmen and laborers has in the settlement amount.[3]

Absent the parties' settling the dispute, we agree with the Appellate Division that the matter must be remanded to the trial court for further proceedings. We note that the record before the trial court was extremely sparse, consisting only of the pleadings and a laconic affidavit. The parties did not even furnish the trial court a copy of the bond, or the agreement between Montefusco and USF&G. The surety's participation in the lawsuit, including the settlement, is not delineated. Whether the extras which were the subject matter of Montefusco's suit involved the claims of the laborers and materialmen which USF&G paid has not been disclosed. In short, the parties should present an adequate record, including evidence demonstrating what a fair and reasonable fee would be for the services rendered with respect to USF&G's subrogated claim.

The judgment of remand is affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal* —None.

---

[3]USF&G also has a claim for reimbursement directly from Montefusco, see note 2, *supra*, which claim would be subject to Montefusco's attorneys' lien. *N.S.J.A.* 2A:13–5.