693 A.2d 525

FIRST FIDELITY BANK, NATIONAL ASSOCIATION, SOUTH [1], PLAINTIFF–RESPONDENT, v. TRAVELERS MORTGAGE SER-VICES, INC., DEFENDANT–APPELLANT, AND GREGORY A. DISABATINO AND PAMELA DISABATINO, HUSBAND AND WIFE; AND THE STATE OF NEW JERSEY AND ITT RESI-DENTIAL CAPITAL CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued March 11, 1997—Decided May 15, 1997.

---

[1] First Fidelity Bank, National Association, South is now First Union National Bank.

Before Judges DREIER, NEWMAN and VILLANUEVA.

*James J. Madden* argued the cause for appellant (*Madden, Madden & Del Duca,* attorneys; *Mr. Madden* and *Damien O. Del Duca,* of counsel and on the brief).

*Jill E. Jachera* and *Peter Norman* argued the cause for respondent (*Klehr, Harrison, Harvey, Branzburg & Ellers,* attorneys; *Ms. Jachera* and *Mr. Norman,* of counsel and on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).

Defendant, Travelers Mortgage Services, Inc. ("Travelers"), appeals from a summary judgment in the Chancery Division determining that its mortgage is junior in priority to the mortgage of plaintiff, First Fidelity Bank, National Association, South ("First Fidelity"). The issue is whether First Fidelity should receive the benefit of an advance in priority when Travelers paid off a prior first mortgage originally issued to Queen City Savings & Loan Association (assigned to Federal Home Loan Mortgage Corporation and then to PNC Bank), which had been first in priority to First Fidelity's then existing second mortgage. We affirm.

On August 21, 1985, Gregory A. DiSabatino and his wife, Pamela, executed a first mortgage with Queen City Savings & Loan Association ("Queen City") in the amount of $100,000 for property located at 5023 Church Road, Mt. Laurel. On August 28, 1985, that mortgage was recorded in Burlington County. On February 2, 1986, that mortgage was assigned to the Federal

Home Loan Mortgage Corporation ("Federal Home Loan") and later to PNC Bank.

On January 9, 1989, the DiSabatinos executed a note and a mortgage on the same property to First Fidelity in the amount of $400,000, which mortgage was recorded on February 28, 1989. On May 10, 1991, the DiSabatinos delivered a promissory note in the amount of $364,415.19 to First Fidelity. This note replaced and superseded, but did not extinguish, the unpaid obligation of the first note.

At the time plaintiff took the mortgage on the property, it knew that the lien constituted a second mortgage. The loan documents specifically stated that Gregory DiSabatino "represents and warrants that [he] is the lawful owner of the Collateral and that the Collateral is and will continue to be free and clear of all security interest in favor of the First Fidelity Bank [e]xcept a first mortgage in favor of the Federal Home Loan Mortgage Corporation." Further, numerous internal documents, dated as late as November 16, 1992, indicate that plaintiff thought it held a second mortgage on the property. Travelers notes that First Fidelity has not shown that it in any way relied upon its position as a first mortgagee.

On May 25, 1990, the DiSabatinos further encumbered the property by executing a third mortgage in the amount of $135,000 with defendant, Travelers. At the time of the execution of this mortgage, it is undisputed that Travelers was aware of plaintiff's mortgage. Its attorney acknowledged this fact at oral argument in the trial court. Also, the First Fidelity mortgage was noted in the title report Travelers obtained prior to taking the mortgage on May 25, 1990. Travelers' mortgage was recorded on June 14, 1990. It is also undisputed that Travelers did not seek, and has never obtained, a subrogation agreement from plaintiff. Some of the proceeds from the third mortgage, $85,799.83, were used to satisfy the first mortgage, which had since been assigned by Queen City to Federal Home Loan and then to PNC Bank.

Although $43,799.83 was paid to the DiSabatinos, none of the proceeds were paid to the plaintiff.

At the time Travelers made the loan, it purported to do so only on the condition that it would then have a first lien on the property. Gregory DiSabatino certified that he intended such when he and his wife applied for and executed said mortgage. Travelers failed, however, to take an assignment of the Queen City mortgage (then owned by PNC Bank) or to obtain a subordination agreement from First Fidelity.

On August 17, 1994, plaintiff, First Fidelity, commenced this foreclosure action against all defendants, including Travelers and borrowers Gregory and Pamela DiSabatino, on its $400,000 mortgage. Also named as a defendant was ITT Residential Capital Corporation, which held a $16,600 mortgage on the property dated December 16, 1993. The claims against ITT have been dismissed without prejudice. Finally, the State of New Jersey was named as a defendant because of a certificate of debt it holds in the amount of $12,825.85, representing taxes owed by the DiSabatinos.

Defendant, Travelers, filed an answer and cross-claim directed against Gregory and Pamela DiSabatino, wherein it asserted breaches of contract and express and implied warranties of title, and sought to be indemnified for any loss sustained in this matter.

Plaintiff moved for summary judgment on its claims against defendant, GE Capital Mortgage, Inc.,[2] then successor in interest to Travelers, which filed a cross-motion for summary judgment.

After oral argument on October 27, 1995, the Chancery Division judge ruled in favor of plaintiff, granting summary judgment against defendant and denying defendant's cross-motion for summary judgment. The judge held that First Fidelity has a first lien on the property, which has priority over Travelers' lien.

---

[2] All references, however, will be made solely either to Travelers or defendant.

On January 17, 1996, the property was sold to a third party and the proceeds deposited in escrow pursuant to an agreement made by the parties.

On February 13, 1996, the judge entered a consent order that this judgment of October 27, 1995, be considered final and appealable as a matter of right pursuant to *R.* 2:2–3(a)(1).

On appeal, defendant Travelers argues that, while it was negligent in not acting upon its knowledge of plaintiff's lien, the Chancery judge abused his discretion in granting the summary judgment against it because plaintiff has been unjustly enriched and defendant has been harmed. Thus, it urges that the doctrine of equitable subrogation should apply under these facts.

■ Defendant first asserts that the notice of plaintiff's mortgage referenced in the title commitment defendant ordered should not, by itself, bar application of the doctrine of equitable subrogation. Defendant claims the judge should not have found that defendant had actual knowledge of plaintiff's lien. Rather, defendant urges that there must have been some mistake because it intended to take a first mortgage, and that is the only reason it loaned the money to the DiSabatinos. The judge, in granting plaintiff's motion, stated:

> [w]hat we're talking about is a state of mind only, and the only relevant state of mind is [ ] I am aware [that] the other side has done something so that it may be unfair for me to charge in here without double-checking with the other side first ... to see if I'm not going to be disadvantaging them.... In other words, if plaintiff thought it was going to be 27th in line, that's irrelevant to [defendant]....

He added that defendant "could have protected [itself] against being behind [plaintiff's] position" but failed to properly do so.

■ Under the remedy of equitable subrogation, "a surety, upon performance, is placed in the position of a creditor with respect to that creditor's rights and available securities." Hon. William A. Dreier and Paul A. Rowe, *Guidebook to Chancery Practice In New Jersey* 138 (4th ed.1997) (citing *Montefusco Excavating & Contracting Co. v. Middlesex Cty.,* 82 *N.J.* 519, 523, 414 *A.*2d 961 (1980)). The remedy "is highly favored in the law."

*Ibid.* (citing *Stevlee Factors, Inc. v. State,* 136 *N.J.Super.* 461, 346 *A.*2d 624 (Ch.Div.1975), *aff'd,* 144 *N.J.Super.* 346, 365 *A.*2d 713 (App.Div.1976)). Furthermore, the law in this area is clear:

> When a third party who is not a surety and who has no interest to protect loans or advances money to pay off a mortgage, payment will result in extinguishment of the mortgage unless the third party has a right of subrogation.... Even if the third party advances the money at the request of the owner of the redemption interest there is no right of subrogation unless the parties agree that the third party shall have the benefit of the mortgage as security for his loan, or that he shall have a new mortgage of equal rank with the old one....
>
> Where a third party loans or advances money to pay off a mortgage pursuant to an agreement with the owner of the redemption interest that the third party lender shall have the benefit of the mortgage as security for his loan, he is clearly entitled to keep the mortgage alive and to enforce it against junior encumbrances even if he does not obtain an assignment of the mortgage. If the third party lender takes a new mortgage from the owner of the redemption interest *without knowledge of the existence of junior encumbrances,* the New Jersey cases and the weight of authority permit subrogation to the rights of the old mortgage holder in order to give effect to the lender's expectation and prevent unjust enrichment of the junior encumbrancers....
>
> Although some courts have denied subrogation when the lender's ignorance of junior encumbrances is due to his own negligence, the better view, followed in New Jersey, is that negligence is not a bar to subrogation unless subsequent intervening rights are involved. Some courts have also held that constructive notice of junior encumbrances through recordation will bar the lender's right to subrogation, but the better view is to the contrary. Constructive notice has no bearing on the lender's expectation that he will acquire security with the same rank as the old mortgage, and the argument based on recordation is really just another form of the argument based on negligence. It is clear that subrogation will not be denied in New Jersey because of the recordation of junior encumbrances which would otherwise move up to a higher priority.
>
> *If the lender knows of an encumbrance junior to the mortgage his money is used to discharge, the old mortgage will not be kept alive against the junior encumbrancer unless there is a stipulation that it shall be kept alive for his benefit or he obtains a formal assignment of it. Without such a stipulation or a formal assignment, it is presumed that the lender did not intend to acquire a position of priority vis-a-vis the junior encumbrancer, and he is not entitled to be subrogated to the position of the old mortgage holder in order to give him such a position.*
>
> [29 *New Jersey Practice, Law of Mortgages* § 147 at 674–676 (Roger A. Cunningham & Saul Tischler) (1975) (citations omitted.) (emphasis added.) ]

Defendant requested the Chancery judge to apply the principle of equitable subrogation to allow defendant to stand in the shoes of the former first mortgagee to the extent defendant advanced

funds to pay off that mortgage, and thus obtain priority over the plaintiff, former second mortgagee.

The factual issue facing the judge was whether defendant had knowledge of plaintiff's lien, rather than whether defendant was merely negligent in not obtaining either a stipulation or formal assignment. If defendant was negligent in the latter respect, then the subrogation remedy may, in the judge's discretion, have been appropriate. This was an issue calling for an exercise of discretion by the Chancery judge who, with full knowledge of the facts and the arguments of all parties, determined that there was no reason to relieve defendant of the effects of its negligence.

In *Metrobank v. National Com. Bank*, 262 *N.J.Super.* 133, 620 *A.*2d 433 (App.Div.1993), this court was faced with a similar situation. There, a husband and wife sought to refinance mortgage liens by obtaining a loan from the plaintiff. *Id.* at 137, 620 *A.*2d 433. The defendant held three mortgages on the property. *Ibid.* On the day of the closing, the couple's attorney allegedly obtained an oral subordination agreement from one of defendant's loan officers. *Id.* at 137–38, 620 *A.*2d 433. Thus, the attorney delivered two letters, two checks, and a subordination agreement. *Id.* at 138, 620 *A.*2d 433. Defendant endorsed one of the checks. *Id.* at 141, 620 *A.*2d 433. Plaintiff argued that its mortgage should take priority, but the trial judge "found there was no reason for equitable relief where the single signed writing—the endorsed $25,000 check—was contrary to the equitable right claimed." *Id.* at 143, 620 *A.*2d 433. We agreed.

On appeal, we stated, "[a] mortgagee who accepts a mortgage whose proceeds are used to pay off an old mortgage is subrogated to the extent of the loan only where the new mortgagee lacks knowledge of other encumbrances." *Id.* at 143–44, 620 *A.*2d 433. We held that "plaintiff was not ignorant, through negligence or otherwise. To the contrary, plaintiff admittedly knew of the two intervening mortgages. Where there is actual knowledge, the new lender is not entitled to subrogation absent a stipulation of subrogation or formal assignment." *Id.* at 144, 620 *A.*2d 433. Thus,

because of the attempted subordination agreement, we affirmed. *Id.* at 144, 146, 620 A.2d 433.

Here, the evidence clearly shows that Travelers similarly had actual knowledge. It does not dispute that it was made aware of First Fidelity's lien, but it apparently claims its representative subjectively assumed it would be subrogated.

Defendant argues that *Metrobank* is inapposite to the present situation, and that we should follow the rule stated in *Trus Joist Corp. v. Nat'l Union Fire Ins. Co.*, 190 N.J.Super. 168, 462 A.2d 603 (App.Div.1983), *rev'd on other grounds sub nom. Trus Joist Corp. v. Treetop Associates, Inc.*, 97 N.J. 22, 477 A.2d 817 (1984). There, when faced with a similar issue as the later *Metrobank* court, we applied the same rule but reached a contrary result:

> There is no doubt that a mortgagee who negligently accepts a mortgage without knowledge of intervening encumbrances will subrogate to a first mortgage with priority over the intervening encumbrances to the extent that the proceeds of the new mortgage are used to satisfy the old mortgage. This result is reached so that the holders of the intervening encumbrances not be unjustly enriched at the expense of the new mortgagee.

*Id.* at 179, 462 A.2d 603.

Thus, the defendant was "entitled to subrogate to the rights of the persons whose liens and encumbrances were satisfied in whole or in part from the proceeds of its loan secured by the mortgage" even though it was aware of a challenge to the title of the property "particularly since [the defendant] did not participate in the fraudulent conveyance." *Ibid.*

Defendant further argues that the Chancery judge should have applied the doctrine of equitable subrogation because plaintiff suffered no prejudice by not assuming the first priority and Travelers had assumed that that was the situation when it advanced funds for the new mortgage. However, as in *Metrobank,* defendant's actions clearly show that it was aware of the other liens. That is, defendant argues it would not have agreed to loan the money for re-financing unless it thought it was receiving a first mortgage. Defendant's reasoning is fallacious because, although it was advancing $135,000, the most it could have been

subrogated to was $85,756.92 paid to PNC Bank. If defendant thought it was necessary to subrogate, then it must have been aware of plaintiff's lien. In addition, after deducting other expenses, the balance of $43,799.83 was paid to the DiSabatinos. This was actual knowledge, as in *Metrobank*, and thus defendant was required to have obtained either "a stipulation of subrogation or formal assignment." *Metrobank, supra*, 262 *N.J.Super.* at 144, 620 *A.*2d 433. In the absence of either, the Chancery judge properly denied equitable subrogation.

The key question is whether defendant had actual knowledge or was merely negligent. Both *Metrobank* and *Trus Joist* agree that mere negligence will not necessarily bar subrogation, but actual knowledge will. The judge found there were no genuine issues of material fact because the title report showed plaintiff's lien. Thus, under New Jersey case law and related treatises, he recognized that "[i]f the lender knows of an encumbrance junior to the mortgage his money is used to discharge, the old mortgage will not be kept alive ... unless there is a stipulation ... or he obtains a formal assignment...." 29 *New Jersey Practice, Law of Mortgages* § 147 at 676. When examining the evidence in the light most favorable to defendant, the evidence was, in the judge's discretion, still insufficient to both deny plaintiff's motion and to support defendant's cross-motion. Because of the similarity of this case to *Metrobank*, this finding was not an abuse of discretion.

Defendant's second assertion is that, again, negligence on its part should not bar application of the doctrine here where plaintiff did not change its position in reliance on its new position as holding first priority, and thus equity requires the doctrine be applied. That is, defendant asserts plaintiff would be unjustly enriched if defendant were not subrogated. Thus, defendant argues that plaintiff "[a]lways intended to have ... a second mortgage behind the amount of the Queen City mortgage."

In the Cunningham & Tischler treatise on mortgages, the authors make it clear that, although one reason to permit subroga-

tion is to "prevent unjust enrichment of the junior encumbrancers," actual knowledge of the party seeking to subrogate, without a stipulation or formal assignment, will trump the goal of preventing unjust enrichment. 29 *New Jersey Practice, Law of Mortgages* § 147 at 675–676.

Similarly, in *Home Owners' Loan Corp. v. Collins,* 120 *N.J. Eq.* 266, 267, 270, 184 *A.* 621 (Ch.1936), a lender's instructions to its attorney regarding an earlier lien on the subject property, "through inadvertence" were ignored, and so the court ordered subrogation. Therefore, "where, through fraud or mistake, the new security turns out to be defective," the court will allow subrogation. *Id.* at 268, 184 *A.* 621. The court also noted that in other cases where subrogation had been granted, it was "on the ground that a state of facts fraudulently concealed from the lender, or of which he was ignorant, impaired the lien of the new mortgage." *Ibid.; See also Chichi & Lombardo Bldg. Co. v. Herrmann,* 121 *N.J. Eq.* 252, 253, 189 *A.* 625 (Ch.1937) (second mortgagee who had no knowledge of existence of a prior mortgage and who had no reason to know because of his "inexperience[ ] in such transactions" was given a priority, as all equities were deemed to be in the second mortgagee's favor).

Defendant contends that plaintiff's own internal reports show that it thought that it still had a second mortgage and, therefore, plaintiff was not really harmed by the failure of Travelers to obtain a subordination. The lack of perceived harm is only one factor to be considered by the judge. Because defendant had actual knowledge of plaintiff's lien, it is irrelevant whether plaintiff would be enriched if defendant is not permitted to be subrogated. 29 *New Jersey Practice, Law of Mortgages* § 147 at 676.

The recording statutes define the parties' priorities, subject only to a discretionary decision on the part of the Chancery judge if equitable subrogation can or should be applied. The facts of this case show both simple negligence of Travelers and it proceeding with actual knowledge of the First Fidelity's mortgage when it advanced funds. It paid almost one third of the proceeds directly

to the mortgagors. The Chancery judge properly applied equitable principles in rendering his decision.

Affirmed.