975 A.2d 548 (2009)
408 N.J. Super. 524
UPS CAPITAL BUSINESS CREDIT, Plaintiff,
v.
Kenneth J. ABBEY, Washington Mutual Bank, FA and American Express Travel Related Services Company, Inc., Defendants.
No. F-2055-07
Superior Court of New Jersey, Chancery Division.
Decided March 20, 2009.
*550 Jay Samuels, for plaintiff (Windels Marx Lane & Mittendorf, L.L.P., attorneys).
Russell M. Finestein, for defendants (Finestein & Malloy, L.L.C., attorneys).
BERMAN, J.S.C.
The doctrines of equitable subrogation and strict foreclosure rarely find themselves implicated in today's tsunami of foreclosure litigation, but both are present in this case. More specifically, the court has to determine the priority between two liens in the context of a postponement of mortgage agreement precipitated by dueling applications for summary judgment, and the appropriate remedy when a junior lienholder was not joined by mistake or negligence to a foreclosure complaint. The parties have submitted a joint stipulation of facts through their respective counsel.
On November 22, 2000, Kenneth J. Abbey (hereinafter "Abbey") mortgaged premises located in Monroe, N.J. to First International Bank (now known as UPS Capital Business Credit, plaintiff) for the sum of $800,000.00, which mortgage was recorded on December 8, 2000. On April 20, 2001, First International Bank agreed to subordinate its mortgage to a mortgage in favor of North American Mortgage Company to secure a loan from North American Mortgage Company to Abbey in the principal amount of $187,450.00. First International Bank then executed a postponement of mortgage agreement, which was recorded on May 1, 2001. In January 2002, subsequent to the execution of the postponement, Washington Mutual Bank, FA (hereinafter "WAMU") purchased the North American Mortgage Company. As a result, WAMU became the holder of the North American Mortgage Company mortgage.
On December 19, 2002, Abbey obtained a loan from WAMU in the amount of $185,000.00. The loan application submitted by Abbey to WAMU for the WAMU loan indicates that the premises were encumbered by a mortgage held by First International Bank with a notation "SUBORD." The title commitment obtained by WAMU in connection with the WAMU loan did not reveal the existence of the First International Bank mortgage despite the fact that it was recorded and properly indexed, and the affidavit of title executed by Abbey for the WAMU loan did not reveal the existence of the First International Bank mortgage. The proceeds of this WAMU loan (i.e.$185,000.00) paid off the mortgage balance of the initial $187,450.00 loan now held by WAMU, as successor to North American Mortgage Company. Abbey did not receive additional or "new funds" from the WAMU loan over and above the principal amount of the original $187,450.00 loan provided *551 for in the postponement of mortgage agreement, and this new loan (for less money) carried a lower interest rate and a longer payoff period. Abbey eventually defaulted. Defendant, through mistake and inadvertence, failed to join plaintiff to the foreclosure complaint. On March 21, 2007, Federal National Mortgage Association obtained title to the premises by way of a sheriff's sale which was recorded in the clerk's office on April 2, 2007.
Foreclosure counsel to WAMU acknowledged that the failure to name First International Bank was inadvertent, and was not deliberately or intentionally done to prevent plaintiff from participating in the foreclosure proceedings; during oral argument counsel for the plaintiff also agreed that the failure to join a necessary party was not done purposefully and was made by mistake.

I. Priority of the Lien
As recited hereinabove, on April 20, 2001, First International executed a standard postponement of mortgage agreement in favor of North American Mortgage Company, the predecessor-in-interest to WAMU, and acknowledged that it was subordinating its $800,000.00 mortgage loan to a new mortgage in the principal amount of $187,450.00. Paragraph 3 of the agreement specifically provides: "The present mortgage will be subject subordinate and inferior in priority to the new mortgage. This includes all renewals and extension of the new mortgage." The amount of the new loan was $185,000.00 less than the face amount of the prior mortgage. When the closing occurred, the HUD-1 settlement statement evidenced that the proceeds of the new mortgage in favor of WAMU were used to pay off the prior North American mortgage. This "new" loan was in effect a "modification" as well as a "renewal"a lower interest rate was applied and the lien was to be paid over a longer period of time. In coming to this conclusion, the court finds that the proceeds of the WAMU mortgage were used to take the place of the original North American mortgage, which was a superior lien by recordation and by agreement to plaintiff's mortgage.
Plaintiff argues that there was no formal execution of a mortgage modification agreement and that the WAMU loan was not a renewal or extension, but a refinancing not covered by the postponement of mortgage agreement, and thus, plaintiff contends their lien was no longer subordinate. Plaintiff is accurate in contending that the existing mortgage was not modified, nor did it mature and expire, but was satisfied and replaced by an entirely new mortgage. However, the court does not find plaintiffs legal argument persuasive since the new sum was lower than the face amount of the loan it was replacing, and was coupled with a reduction of the interest rate as well as a longer payment period.[1]

Equitable Subrogation
Generally stated, the doctrine of equitable subrogation provides that if a third-party loans or advances funds to pay off an existing mortgage or other encumbrance in the belief that no junior liens encumber the subject premises, and it later *552 appears that intervening liens existed, the new lender will be deemed to be substituted into the position of the prior mortgage holder by equitable assignment of the prior mortgage to give effect to the new lender's expectation and to prevent unjust enrichment of the junior encumbrances. The right of subrogation is recognized to the extent that the money advanced is actually applied to the payment of senior liens, plus interest on the amount so applied. Plaintiffs counsel argues that the doctrine of equitable subrogation does not apply in this instance as defendant was not merely negligent, but had actual knowledge of its recorded, though subordinated, position. This difference was articulated in First Fidelity Bank, Nat. Ass'n, South v. Travelers Mortg. Services, Inc., 300 N.J.Super. 559, 569-570, 693 A.2d 525 (App.Div.1997) where the court held: "[I]f the lender knows of an encumbrance junior to the mortgage his money is used to discharge, the old mortgage will not be kept alive ... unless there is a stipulation... or he obtains a formal assignment."
The court assigned actual knowledge as a title search showed when each party recorded. Though plaintiff relies upon this case to bolster its argument, the facts in the instant matter are distinguishable: although there appears to be constructive notice as to UPS Capital's interest, the cases cited below assert that constructive notice is not a bar to equitable subrogation.
The doctrine of equitable subrogation is "highly favored in the law."[2]Montefusco Excavating & Contracting Co. v. Middlesex County, 82 N.J. 519, 523, 414 A.2d 961 (1980). Generally, a new mortgagee is subrogated to the priority rights of an old mortgagee by either agreement or assignment. Ibid. In the absence of such an agreement or assignment, a mortgagee who accepts a mortgage whose proceeds are used to pay off an older mortgage is equitably subrogated to the extent of the loan so long as the new mortgagee lacks knowledge of the other encumbrances. Metrobank for Sav., FSB v. Nat'l Cmty. Bank, 262 N.J.Super. 133, 143-44, 620 A.2d 438 (App.Div.1993). In that situation, the new mortgagee, by virtue of its subrogated status, can enjoy the priority afforded the did mortgagee. Ibid. Equitable subrogation may still be afforded even though lack of knowledge on the part of the new mortgagee occurs as a result of negligence. Kaplan v. Walker, 164 N.J.Super. 130, 138, 395 A.2d 897 (App.Div.1978). In First Fidelity Bank, National Association South v. Travelers Mortgage Services., 300 N.J.Super. 559, 565, 693 A.2d 525 (App.Div.1997), the court stated: "although some courts have denied subrogation when the lender's ignorance of junior encumbrances is due to his own negligence, the better view, followed in New Jersey, is that negligence is not a bar to subrogation unless subsequent intervening rights are involved." In Camden County Welfare Bd. v. Federal Deposit Insurance, 1 N.J.Super. 532, 550, 62 A.2d 416 (Ch.Div.1948), the court provided guidance as to when a mistake would be a valid *553 ground for claiming a lack of knowledge of a prior lien:
But what degree of vigilance is to be exercised must depend upon the facts of each case. Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected although the highest degree of vigilance, has not been exercised.
In Home Owners' Loan Corp. v. Collins, 120 N.J. Eq. 266, 269, 184 A. 621 (Ch. Div.1936), the court found that the complainant was entitled to subrogation despite the fact that both the application for the loan and the title search revealed another mortgage. In fact, the court found that there was some carelessness on the part of some employee of the complainant, and also found mistake or fraud on the part of the borrowers because they submitted an affidavit which did not provide for the existence of the mortgage. Ibid.
As stated, both sides have moved for summary judgment as to the issue of priority. A motion for summary judgment under Rule 4:46-2 is subject to the well-settled standard as propounded by the New Jersey Supreme Court in Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954), and reaffirmed in Brill v. Guardian Life Insurance Company of America, 142 N.J. 520, 666 A.2d 146 (1995). In Brill the Court adopted the federal standard as employed by the United States Supreme Court in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Brill, supra, 142 N.J. at 539-40, 666 A.2d 146. The Brill standard "requires the motion judge to engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 533, 666 A.2d 146. Under this standard the court is to consider whether the competent evidentiary materials presented, viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the dispute in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., supra, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If not, then summary judgment is appropriate.
Here, there are no material facts in dispute, and although plaintiff argues that WAMU had actual notice of UPS Capital's interest and lien, the facts before the court show that the title commitment obtained by WAMU in connection with the WAMU loan did not reveal the existence of the First International Bank mortgage despite the fact that it was recorded and properly indexed, and the affidavit of title executed by Abbey for the WAMU loan did not reveal the existence of the First International Bank mortgage. Nonetheless, foreclosure counsel to WAMU acknowledged that the failure to name First International Bank was the result of mistake and inadvertence, and was not deliberately or intentionally done to prevent plaintiff from participating in the foreclosure proceedings.
In the final analysis, it is the discretion of the Chancery judge to decide whether equitable subrogation should be applied, and weighing the equities, this *554 court finds that equitable subrogation does apply and WAMU maintains its first priority lien.

II. Remedy
The second question before the court is what equitable remedy should be fashioned to mitigate the exclusion of UPS Capital's junior interest from the foreclosure action. Plaintiff argues that "strict foreclosure" is the appropriate remedy.
The remedy of strict foreclosure was created by the English courts to extinguish the mortgagor's equitable right of redemption. Sears, Roebuck and Co. v. Camp, 124 N.J. Eq. 403, 407, 1 A.2d 425 (E. & A.1938):
A strict foreclosure is a procedure designed to extinguish the right of redemption, the creation of the English court of chancery in early time to mitigate the rigors of the common law conception of a mortgage as a conveyance of the legal title upon condition in the nature of a defeasance[.]
Mortgages are now viewed as security for payment of the mortgage debt the mortgagor's equity of redemption must now be foreclosed by a judicial sale pursuant to which the mortgagor receives full value of the mortgaged property. By filing an action in strict foreclosure, the foreclosing mortgagee can force the junior encumbrancer to either redeem the mortgage debt or forfeit his lien against the mortgaged property. Citicorp Mortgage, Inc. v. Pessin, 238 N.J.Super. 606, 611, 570 A.2d 481 (App.Div.), certif. denied, 122 N.J. 141, 584 A.2d 213 (1990). Thus, a complainant in a foreclosure action who purchases in good faith at the foreclosure sale is entitled to file a complaint to force an outstanding junior lienor to redeem its mortgage or be foreclosed of the equity of redemption. Strict foreclosure may not be used to extinguish the lien of a junior encumbrance who was intentionally omitted from the foreclosure action. Indiana Inv. Co. v. Evens, 121 N.J. Eq. 72, 77, 187 A. 158 (Ch. Div.1936). Here, there is no argument that the junior lienholder was excluded from the foreclosure action deliberately. The court finds, however, that the end result of, a strict foreclosure proceeding, where the junior encumbrancer would have to pay the entire amount of the senior mortgage debt, if he is to redeem from the senior lienholder, would be a draconian remedy in light of the facts of this case addressed hereinabove, and the fact that defendant purchased the property at sheriff's sale for the nominal sum of $100.00. Defendant's mistake precluded representation of the junior lienholder's interest at sheriff's sale, and this court, mindful of the depressed real estate market, orders summary judgment in favor of defendant as to its priority; and orders the March 21, 2007 sheriff sale be vacated, and defendant to commence a proceeding de novo, also known as reforeclosure, to extinguish the plaintiff's junior encumbrance. Citicorp Mortgage, Inc. v. Pessin, supra, 238 N.J.Super. at 613, 570 A.2d 481. This also adequately protects the plaintiff who will be afforded the possibility it didn't have previously (i.e. to bid for the property).
NOTES
[1] Plaintiff's counsel defines a refinancing closely to that provided by Regulation Z, 12 C.F.R. § 226.20(a): "[W]hen an existing obligation is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer." The court notes that the definition provided by § 226.20(a)(2) also states exceptions to this definition of a refinancing, such as when there is "a reduction in the annual percentage rate with a corresponding change in the payment schedule," which corresponds to the facts of the instant matter.
[2] Plaintiff argues that equitable subrogation lacks precedentor use in recent history. This Court does not comment other than to agree with the Sears Court that "a lack of precedent, or mere novelty in incident, is no obstacle to the award of equitable relief, if the case presented is referable to an established head of equity jurisprudenceeither of primary right or of remedy merely" Sears v. Camp. 124 N.J. Eq. 403, 412, 1 A.2d 425 (E. & A.1938). Moreover, though the factual pattern differed, which didn't include the additional issue of a flawed sheriff's sale, the doctrine of equitable subrogation was endorsed most recently by another trial court judge, the Hon. Maria Sypek. See U.S. Bank Nat. Ass'n v. Hylton, 403 N.J.Super. 630, 959 A.2d 1239 (Ch.Div.2008).