**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5863-17T1

DEUTSCHE BANK NATIONAL
TRUSTEE COMPANY AS TRUSTEE
FOR FIRST FRANKLIN MORTGAGE
LOAN TRUST 2006-FF9, MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2006-FF9,

     Plaintiff-Respondent,

v.

ALLEN KLINGER and GERI
KLINGER, Husband and Wife,
Tenants/Occupants, and WHITE
PINE HOLDINGS, LLC,

     Defendants,

and

JR FACTORS, INC.,

     Defendant-Appellant.

_____

     Submitted April 1, 2019 – Decided June 26, 2019

     Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-022415-15.

Schwartz & Schwartz, attorneys for appellant (Richard J. Schwartz, on the briefs).

Pluese Becker & Saltzman, LLC, attorneys for respondent (Stuart H. West, on the brief).

PER CURIAM

Defendant JR Factors, Inc., appeals from the trial court's order granting summary judgment to plaintiff Deutsche Bank National Trust Company ("Deutsche Bank") in a mortgage priority dispute. In that regard, defendant contends he should not have been estopped from relitigating the issue of priority that had been resolved on summary judgment in a prior foreclosure action. Defendant also disputes the trial court's calculation of the amount due as a final judgment. For the reasons that follow, we affirm.

This case arises from two mortgage foreclosure actions that involved the same property and identical parties. Between April 2003 and October 2005, Allen and Geri Klinger ("the Klingers") executed three mortgages in favor of Wachovia Bank, N.A., and totaling $1,037,385. All three mortgages were secured by the Klingers' property located in the Borough of Franklin Lakes ("the

2

subject property"). All three mortgages were recorded on or before October 31, 2005.

On December 29, 2005, the Klingers executed a note and mortgage in favor of defendant JR Factors in the amount of $400,000, which was likewise secured by the subject property. Defendant's mortgage was recorded on January 14, 2006. Therefore, it is indisputable that at the time of defendant's loan, there were three mortgages to Wachovia Bank, totaling $1,037,385, that had priority over defendant's mortgage.[1]

On February 15, 2006, the Klingers executed a note and mortgage in favor of First Franklin, a Division of National City Bank of Indiana ("First Franklin"), in the amount of $1,250,000 ("the subject mortgage"). The mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for First Franklin. This loan paid off the three prior Wachovia mortgages in full, in the amount of $885,367.93. The Klingers also cashed out $354,357.93. The subject mortgage was recorded on March 3, 2006.

---

[1] On March 17, 2007, the Klingers executed another note and mortgage in favor of JR Factors, secured by the subject property, in the amount of $100,000. It is undisputed that this mortgage was junior to plaintiff's and it is therefore not at issue in this appeal.

A-5863-17T1

On February 1, 2008, MERS as nominee for First Franklin executed an assignment of mortgage to Deutsche Bank as trustee for First Franklin Mortgage Loan Trust 2006-FF9, Mortgage Pass-Through Certificates, Series 2006-FF9. The assignment was recorded on April 16, 2008.

On December 1, 2007, the Klingers defaulted on their obligation to maintain payments pursuant to the note and subject mortgage. Accordingly, plaintiff Deutsche Bank filed a foreclosure complaint ("the first foreclosure") on April 8, 2008. The defendants in that action were the Klingers, White Pine Holdings, LLC (holder of a UCC Financing Statement), and current defendant JR Factors. Only JR Factors filed a contesting answer, alleging its December 2005 mortgage in the amount of $400,000, had priority over plaintiff's February 2006 mortgage.

On March 19, 2010, after extensive discovery including depositions, Judge Robert P. Contillo granted summary judgment in plaintiff's favor. The court found that plaintiff's mortgage paid off the outstanding balance of the three Wachovia mortgages, totaling $885,367.93, each of which was executed and recorded prior to defendant's $400,000 mortgage. Judge Contillo held that Deutsche Bank was entitled to equitable subrogation of JR Factors' loan to the extent of its payment of $885,367.93 to satisfy the loans that were superior to

4

defendant's at the time of the payoff. The judge also found that plaintiff's negligence in not performing due diligence to find out there was a fourth mortgage did not defeat its entitlement to the remedy. Moreover, the judge held the equities did not favor defendant, who should have known that a loan was being made due to the unexplained shift in its priority position, and also because it sat on its rights by failing to file for foreclosure when the homeowners defaulted.

Thereafter, an order and judgment, providing that "[a]ll objections in the Contesting Answer of JR Factors filed in this foreclosure action are hereby stricken, and the Answer is deemed non-contesting," was recorded with the Bergen County Clerk.

Because Final Judgment was not entered, however, the 2008 foreclosure action was eventually administratively dismissed on September 16, 2013. On February 25, 2015, plaintiff sent new notices of intent to foreclose to the Klingers.[2] Plaintiff elected to exercise its contractual right to accelerate the balance due under the mortgage and note, and instituted the instant foreclosure action ("the second foreclosure") on June 24, 2015.

---

[2] The claims against the Klingers were resolved on August 4, 2016, when the court granted summary judgment in plaintiff's favor.

Defendant's answer in the second foreclosure again challenged plaintiff's priority, asserting as it had in the first foreclosure that because JR Factors' $400,000 mortgage was recorded before the subject mortgage it should be given priority. On October 13, 2017, Judge Edward A. Jerejian granted plaintiff's motion for summary judgment, holding that defendant was estopped from relitigating the priority issue that had been fully litigated and resolved in the 2008 foreclosure case.

The court then entered a final judgment in the amount of $2,214,995.65.

On appeal, defendant challenges the trial court's October 13, 2017 order of summary judgment. In addition, defendant disputes the amount of the judgment, claiming it should have been limited to $885,367.93, which was the extent of the equitable subrogation. We address these issues in turn.

Summary judgment

The standard of review for a grant of summary judgment is de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

> [W]hen deciding a motion for summary judgment under Rule 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in

> consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

"[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley, 228 N.J. at 346 (citing Templo Fuente, 224 N.J. at 199 (quoting R. 4:46-2)(c)).

In reviewing a grant of summary judgment, appellate courts consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986)). However, "conclusory and self-serving assertions by one of the parties are insufficient to overcome [a summary judgment] motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005). If there is no issue of fact, appellate courts give no special deference to the trial court's rulings on matters of law. Templo Fuente, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A-5863-17T1

"[W]here the party opposing summary judgment points only to disputed issues of fact that are 'of an insubstantial nature,' the proper disposition is summary judgment." Brill, 142 N.J. at 529 (quoting Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954)). Even if there is a denial of essential fact, the court should grant a motion for summary judgment if the rest of the record, viewed most favorably to the party opposing the motion, demonstrates the absence of a material and genuine factual dispute. See Rankin v. Sowinski, 119 N.J. Super. 393, 399-400 (App. Div. 1972).

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of indebtedness, and the right of the mortgagee to resort to the mortgaged property." Great Falls Bank of Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993); see also Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952). ("Since the execution, recording, and non-payment of the mortgage was conceded, a prima facie right to foreclose was made out"). If a defendant's answer fails to challenge the essential elements of the foreclosure action, a plaintiff is entitled to strike the defendant's answer. Old Republic Ins. Co. v. Currie, 284 N.J. Super. 571, 574 (Ch. Div. 1995).

In this case, defendant challenged only plaintiff's right to foreclose, claiming its mortgage had priority over plaintiff's mortgage. As the trial court

found, however, because the priority issue was fully litigated and resolved in the first foreclosure, defendant is estopped from relitigating it in this case.

Res judicata is a common law doctrine barring the re-litigation of claims or issues that have already been adjudicated. See Tarus v. Borough of Pine Hill, 189 N.J. 497, 520 (2007). More specifically, collateral estoppel is "the branch of the broader law of res judicata which bars re-litigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." Ibid. (quoting State v. Gonzalez, 75 N.J. 181, 186 (1997)).

In Hennessey v. Winslow Township, the New Jersey Supreme Court set forth a five-factor test to determine whether collateral estoppel applies to bar a previously litigated claim:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issues was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to, or in privity with a party to, the earlier proceeding.
>
> [183 N.J. 593, 599 (2005) (citations omitted) (quoting In Re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

9

Defendant contends that the trial court erred in estopping the relitigation of the priority issue, arguing that the third factor of the <u>Hennessy v. Winslow</u> test was not met, as this case was administratively dismissed for lack of prosecution by the Office of Foreclosure and thus no final judgment issued. As did the trial court, we reject defendant's argument.

The primary consideration for a court in determining whether or not to apply collateral estoppel is whether the parties were granted a full and fair opportunity to litigate the issue in the prior action. <u>See</u> <u>Winters v. N. Hudson Reg'l Fire & Rescue</u>, 212 N.J. 67, 85 (2012). The ultimate question is whether a party "has had his day in court on an issue." <u>McAndrew v. Mularchuk</u>, 38 N.J. 156, 161 (1962). This is a natural result of the doctrine of collateral estoppel being "guided by the 'fundamental legal principal that . . . once an issue has been fully and fairly litigated, it ordinarily is not subject to relitigation between the same parties either in the same or in subsequent litigation.'" <u>State v. K.P.S.</u>, 221 N.J. 266, 277 (2015) (alteration in original) (quoting <u>Morris Cnty. Fair Hous. Council v. Boonton Twp.</u>, 209 N.J. Super. 393, 444 n. 16 (Law Div. 1985)). In this case, as the trial judge found, the issue of priority was fully and fairly litigated resulting in a judgment in plaintiff's favor on the priority issue.

10

We also agree with the trial judge that the lack of a succeeding final judgment did not bar the application of collateral estoppel. In that regard, the judge found Section 13 of the Restatement (Second) of Judgments, Requirement of Finality, "particularly instructive." That section provides:

> The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.
>
> [Restatement (Second) of Judgments § 13 (Am. Law Inst. 1982).]

We agree with the judge's conclusion that the order and decision issued by Judge Contillo granting summary judgment were "sufficiently firm." The judgment was "a firm and stable one, the 'last work' of the rendering court – a 'final' judgment." Restatement (Second) of Judgments § 13, cmt. a (Am. Law Inst. 1997). Defendant's answer had been stricken and the matter was to proceed as uncontested towards final judgment. There was no thus further opportunity to litigate the issue at the trial court level.

We reject defendant's complaint that it was deprived of the opportunity to appeal Judge Contillo's decision because no final judgment was ever entered. Defendant could have, but did not, pursue an interlocutory appeal or move to

11

have the case restored when it obtained notice of the administrative dismissal. Instead, defendant did nothing to preserve its right to further judicial review in the five years between Judge Contillo's 2010 entry of summary judgment and the 2015 filing of the second foreclosure.

Nor are we swayed by defendant's argument that the diminution of the property's value is a basis to reweigh the equities to give defendant priority. First, as the trial court found, that argument is barred by collateral estoppel as discussed above. Second, as reasoned by Judge Contillo, the mortgage priority in the instant matter is a reflection of First Franklin, predecessor in interest to Deutsche Bank, paying off the earlier Wachovia mortgages and the inequity that would result if JR Factors were to benefit from these payments by being undeservedly vaulted into first place. We agree with the trial judge that any the diminution in value that may or may not have occurred since 2008 is in no way grounds for upsetting the established mortgage priority in this matter.

Calculation of the amount due

We also reject defendant's challenge to the trial judge's determination of the amount of the judgment. In response to defendant's objection to the correctness of plaintiff's affidavit pursuant to Rule 4:64-1(d)(3), plaintiff supplemented its submissions to the Office of Foreclosure with copies of its

business records and invoices to support its calculations of the amounts due. Plaintiff also submitted proofs to the court in compliance with R. 4:64-2. The judge found that plaintiff's original submission to the Office of Foreclosure and the supplemental documentation demonstrated the following:

1)  The unpaid principal balance as of December 1, 2007 was $1,224,205.14.
2)  Interest from November 1, 2007 to March 21, 2018 was $837,235.36.
3)  Real estate taxes through March 21, 2018 total $144,402.15.
4)  Home owners insurance through March 21, 2018 totals $4,518.00.
5)  Property inspection costs total $320.00
6)  Property preservation costs total $4,315.00
7)  Late charges through April 10, 2017 total $0.

The court found that these advances, when added to the principal, equaled $2,214,995.65. Moreover, the judge noted that defendant did not dispute the calculation of the amounts due. Rather, defendant's contention was that plaintiff's first lien position is only as to the amount plaintiff expended to pay off the Wachovia loans, that is, $885,367.93.

We conclude that the trial judge correctly calculated the amount due as a final judgment. We note that there is a distinction between the total amount due as a final judgment and the total amount as to which plaintiff has priority. The judge in this case did not specifically fix the amount as to which plaintiff had

priority over defendant, which would be based upon the subrogated amount of $885,367.93, rather than the full unpaid balance of $1,224,205.14, plus interest on the subrogated amount and the amount paid in real estate taxes and insurance.[3]

To limit plaintiff's overall damages to the subrogated amount would ignore its payment of real estate taxes and insurance since 2008. In that regard, "[t]he right of subrogation is recognized to the extent that the money advanced is actually applied to the payment of senior liens, plus interest on the amount so applied." UPS Capital v. Abbey, 408 N.J. Super. 524, 529-30 (Ch. Div. 2009); see also Reibman v. Myers, 451 N.J. Super. 32, 40, 47-48 (App. Div. 2017) (affirming the trial court's holding that a bank's interest equitably subrogated to the mortgage it paid off, as well as real estate taxes, insurance, interest and other carrying costs). Moreover, had the foreclosed property retained substantial value, after payment of the subrogated amount, defendant could collect up to the full amount of its loan, with plaintiff having no ability to collect remaining funds

---

[3] Plaintiff asserts that the interest on the subrogated amount is $605,917.24, and the real estate taxes and insurance it paid totals $148,920.15. Thus, according to plaintiff, the amount of its priority over defendant is $1,640,205.32. We do not, and the trial court did not, make a finding as to the accuracy of these calculations. We merely note these figures to highlight that the amount of plaintiff's final judgment is different from, and substantially higher, than the amount of plaintiff's priority over defendant.

14

after defendant's loan was satisfied. Thus, the trial court correctly entered a properly calculated final judgment. After plaintiff collects the subrogated amount plus interest on the subrogated amount and the amount paid in real estate taxes and insurance, defendant will have an opportunity to collect the full amount of its loan, should the property retain sufficient value. After that, if there is any remaining equity in the property, plaintiff would have the opportunity to collect up the full amount of its judgment.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5863-17T1